[L. A. No. 14233. In Bank.—December 28, 1933.]

HERBERT N. WARBASSE, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Herbert N. Warbasse, *in pro. per.*, and Andrew J. Copp, Jr., for Petitioner.

Philbrick McCoy for Respondent.

THE COURT.—Application was made by petitioner to this court for admission to practice law in this state notwithstanding the refusal of the board of bar examiners to recommend his admission. His application has the dual title, ''Petition to Review Decision of Board of Bar Examiners'' and ''Petition to Invoke Inherent Power of Supreme

Court for Admission to Bar of California." The record before us contains a copy of petitioner's application to the board of bar examiners which states that petitioner is now a resident of the State of California; that he is a graduate of Lafayette College with degrees of A. B. and A. M. and has a degree of LL. B. from the New York Law School; that he was admitted to practice law by the Supreme Court of New York, Appellate Division, Second Department, in 1902, thereby becoming entitled to practice in all of the courts of the State of New York, and that he was admitted to practice in the United States District Courts and Circuit Courts, Eastern District of New York in 1908; that immediately after his admission he was employed as an editor on a legal encyclopedia under William McKinney, that he then became a partner in the law firm of Warbasse & Warbasse in Brooklyn, New York, with a general practice; that in 1912 he was appointed assistant district attorney of Kings County (Brooklyn) New York, and resigned from the position of chief assistant district attorney in 1922 to enter private practice; that on March 7, 1930, he was suspended from practice on the charge that a clerk in his office had solicited cases; and that he was reinstated in March, 1932. In addition, the record consists of the certificate of admission to the bar and good standing of applicant issued by a Justice of the Court of Appeals of the State of New York verifying the fact that petitioner was admitted to practice in New York on July 1, 1902, and was an attorney in good standing except for a period of two years from March 7, 1930, during which time he was suspended by the Appellate Division of the New York Supreme Court; that he has been reinstated by an order of that court made on March 29, 1932, and is now an attorney in good standing in the State of New York; the sponsor's certificate, and letters of recommendation from the several judges of the Appellate Division, Second Department, of the Supreme Court of the State of New York, from judges of the Supreme Court of New York, and from attorneys and business men of Brooklyn, New York, the community in which petitioner resided and previously practiced law. It also contains the stenographic report of one of the hearings in this state before the board of bar examiners, together with a letter by petitioner setting forth the subject matter

of a subsequent hearing before the board of bar examiners when a stenographic report was not made. It also contains a copy of the charges made against petitioner on the occasion of his suspension in New York, a transcript of the testimony taken before the referee, together with the report of the official referee which was to the effect that the charge had been established that one of the clerks in petitioner's office, one James Basil by name, had in fact solicited cases for the office and that regardless of whether petitioner was in fact actually cognizant of the practice, it was not consistent with his duties as an attorney to turn over the business management of the office to a layman employee, making no inquiries as to the specific methods used in securing business, and that under such circumstances petitioner must be deemed to be chargeable with the knowledge of what took place in his office, and recommending, therefore, that petitioner be suspended from practice for the period of one year.

There is no question presented as to petitioner's legal training and ability. He is a college graduate with A. B. and A. M. degrees. He likewise has a degree of LL. B. and was assistant district attorney of Brooklyn, New York, for some ten years. The resolution of the board of bar examiners denying his application makes no reference to his legal ability, but states that it is denied upon the ground that "applicant has failed to show that he is possessed of the requisite good moral character and to meet the burden of proving that he is entitled to the high regard and confidence of the public and of removing all reasonable doubt of moral unfitness". No letters or other evidence derogatory to petitioner's character are presented, other than that embodied in the transcript of the testimony taken at the hearing before the referee in New York upon the charge that cases were solicited by at least one clerk in his office. It follows that this stenographic record comprises all of the testimony adverse to petitioner.

We have examined the record of the proceeding before the referee in New York, and fail to find any word of testimony that petitioner was actually aware that soliciting of cases, or ambulance chasing, was being practiced in his office by any of his subordinates. He emphatically denied that he had any knowledge of such practice, and this denial

was corroborated by the testimony of each and every witness who was interrogated with reference to the situation. Thus, James Basil testified that he was employed by Ralph Capone, the head office manager, whom petitioner had retained as office manager when he took over the practice of his deceased predecessor, and to whom he entrusted the entire handling of the office affairs, including instructions to the clerks and investigators. When asked why he stated he was employed by Ralph Capone, he replied: "Because we never had any dealings with Mr. Warbasse. Mr. Warbasse was absolutely inviolate. Mr. Warbasse had absolutely nothing to do with it. Mr. Warbasse didn't know what was going on, because Mr. Capone employed us." Moreover, none of the witnesses, who were interrogated with reference to whether or not their cases had been solicited by anyone from petitioner's office, testified to any contact directly with petitioner, or to any circumstance which would furnish support to an inference that petitioner had any actual knowledge that their cases had been procured by solicitation. Although there is in the record the testimony of one of the clerks in the office, William Petracone, to the effect that when he asked for a raise in salary, "*he* said he would give me a chance to make more money, and *he* asked me if I would solicit cases. I told *him* I didn't think that was my work", which upon a cursory reading might seem to refer to petitioner, it is quite apparent from his subsequent testimony that he was in fact referring to Ralph Capone as asking him to solicit cases and not petitioner. And, although the volume of negligence cases in the office was unusually large, we think it possible that petitioner may have been in ignorance of the fact that any of these cases had been procured by solicitation. He had undoubtedly acquired a wide reputation as a trial lawyer during his practice as assistant district attorney which would tend to bring him in this type of business, and, furthermore, he took over the practice of a lawyer with a wide Italian clientele who had apparently specialized in that type of case. It must be admitted, on the other hand, that there is ample evidence in the record of the hearing before the referee in New York to support the charge that ambulance chasing was in fact being carried on as a regular practice in petitioner's office under the supervision of Ralph Capone,

the office manager, who handled all of the administrative business of the office. In fact, petitioner openly admitted in court that, subsequent to his appearance before the referee, he had caused an investigation to be made of cases pending in his office and had become convinced that some of them, at least, had been procured by solicitation. As before indicated, the report of the referee admits that there is a dearth of testimony to prove that petitioner had actual knowledge of the practice, but held that petitioner, as head of the office, was chargeable with constructive knowledge of what was in fact going on in the office and that he was responsible for any unethical conduct continuously practiced by his subordinates. The report of the referee expressly found that the usual concomitants to ambulance chasing, such as the settling of cases irrespective of their merits, and inadequate attention to cases thus procured, were absent in petitioner's case as he was an able attorney and gave adequate attention to the preparation and presentation of his cases.

■ There can be no doubt that, despite the fact that petitioner has been reinstated in the State of New York and so far as that state is concerned his suspension may be considered to be expunged from the record, we may go behind the action of the court in that particular case to determine for ourselves from the record presented whether or not he is eligible to admission to practice law in this state. (*In re McCue*, 211 Cal. 57 [293 Pac. 47].) Likewise, the fact that he has already expiated his offense and paid the penalty by suspension for two years in New York, does not necessarily require that he be admitted to practice in this state upon mere formal proof of his moral fitness. For, if the record of the hearing before the referee in New York clearly showed that petitioner had in fact knowingly participated in the practice of ambulance chasing, we would undoubtedly be warranted in requiring exceptionally strong proof of his rehabilitation. However, the record presents a grave question of whether or not petitioner was in fact aware of the practice in his office, which was a fairly large one. We are mindful of the fact that from the circumstances shown a legitimate inference may possibly be drawn that petitioner was in fact aware of the practice. However, the record before us fails to carry to us a sense of

conviction that such is the case. The referee before whom the hearing was held refused to draw such inference and he was in a better position to correctly judge the facts than are we. This being the state of the record, we believe that the opinion of those who have had ample opportunity to know his character and to observe his conduct over a long period of years is entitled to a great deal of weight. There has been filed by petitioner letters of recommendation from judges, attorneys and business men. Most of the let-. ters are from judges of the Appellate Division, Second Department, of the Supreme Court, the court which suspended him. Although the number of letters is not unduly large, they are from persons whose positions indicate that they possess a real sense of responsibility for the integrity of the legal profession, and who, therefore, would not be induced by reasons of friendship, or any reason other than a sincere belief in his honesty and integrity, to recommend him for admission to our bar. The letters attest petitioner's ability, his wide experience, and the worth of his character. We believe that the writers thereof were giving an honest estimate of his character and that we may unqualifiedly accept that estimate.

Petitioner fully and fairly disclosed in his application to the board of bar examiners the fact of his suspension in New York and made little, if any, attempt to exculpate himself from the fault of permitting such a system to be practiced in his office. It is true that petitioner did not in his application to this court emphasize the fact that the refusal of the board of bar examiners to recommend his admission was probably based upon his suspension in New York, but a frank statement of his suspension was contained in his application to said board of bar examiners which was incorporated in his petition. We are not inclined to criticise petitioner's failure in this regard, as we do not believe that it was a deliberate attempt to mislead the court. His application is denominated "Petition to Review Decision of Board of Bar Examiners" and it was self-evident that a review of such decision would necessarily disclose the fact of his suspension.

In view of the unconvincing character of the evidence presented in the transcript of testimony at the hearing before the referee in New York, hereinbefore dis-

cussed, the letters of high recommendation of petitioner by the justices of the courts of New York before whom he practiced over a long period of years, and a total absence of any letters or testimony derogatory to petitioner's character, we are of the opinion that he should be admitted to practice law in this state.

It is, therefore, the order of this court that petitioner be and he is hereby admitted to practice as an attorney and counselor at law, authorized to practice in all the courts of this state, and the clerk will deliver to him a certificate of such authority upon his taking the prescribed oath and signing the roll of attorneys.