[No. S009069. Dec. 4, 1989.]

GEORGE N. SEIDE, Petitioner, v.
COMMITTEE OF BAR EXAMINERS OF THE STATE BAR OF
CALIFORNIA, Respondent.

COUNSEL

George N. Seide, in pro. per., and Michael Rochford for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Ellen R. Peck for Respondent.

OPINION

**THE COURT.**—Petitioner George N. Seide challenges the decision of the Review Department of the State Bar Court refusing to certify him for admission to the bar on the ground that he lacks good moral character. We agree with the review department and decline to admit petitioner to practice.

## I. BACKGROUND

In February 1987, the State Bar informed petitioner he had passed the California Bar examination, but would not be certified to practice law pending an investigation into his moral character. A three-member panel held four days of hearings between October 1987 and January 1988, and

found the following facts: From 1975 through 1982, petitioner was arrested five times for drug-related offenses. In 1975 he was arrested at his girl-friend's house for possession of marijuana; the charges were later dismissed. He was arrested again in 1978, at Miami International Airport, when a suitcase he had checked at a friend's request was found to contain cocaine. Petitioner testified before the hearing panel that in the airport incident he knew he was participating in a crime; he assumed the suitcase contained several pounds of marijuana to be resold in California. According to peti-tioner, he was to be compensated for his participation by reimbursement of his airfare. Again all charges were dismissed. In 1979, petitioner was arrest-ed at Los Angeles International Airport when, acting on behalf of another friend, he picked up a package containing marijuana. No charges were filed. In 1982, police searched his car following a traffic stop, and found a small amount of cocaine. Again, no charges were filed.

Petitioner's involvement with drugs drastically expanded until finally, in 1981, he and a partner entered into an extensive cocaine trafficking enter-prise, which extended over the next 11 months. Petitioner testified at length to the scope of his drug dealing, at one point estimating he and his partner had participated in more than 50 transactions, including 5 sales of more than a pound of cocaine. The conspiracy ended in September 1982, when petitioner and his partner were arrested by undercover federal agents after selling them six pounds of cocaine (valued at more than $500,000). Petition-er pleaded guilty and was convicted of knowingly and intentionally distrib-uting 2.845 kilograms of cocaine, and aiding and abetting the distribution of another 27 grams of cocaine. For these crimes he received a three-year suspended sentence, with a six-month actual sentence and five years' proba-tion. Petitioner served 147 days at a federal work camp and his probation terminated in September 1988.

Significantly, all but the first of these arrests occurred after petitioner entered law school, which he attended from 1976 to 1979. He first took the bar examination in 1979. He finally passed the exam in 1986. Hence, peti-tioner's most extensive drug dealing actually took place *while* he studied for the bar exam.

Two of the three-member hearing panel found petitioner possessed good moral character and recommended he be admitted to practice law. These members observed that petitioner cooperated throughout the proceedings, and expressed remorse for his past acts involving the use and sale of drugs. While acknowledging petitioner's previous criminal activities were serious, the panelists nonetheless determined that he had successfully rehabilitated himself and earned a reputation for honesty, reliability, fairness, and trustworthiness.

The final panel member dissented, remaining unconvinced of petitioner's rehabilitation. In her opinion, petitioner's character evidence was at best questionable. Moreover, even were such testimony given full weight, the combined evidence of rehabilitation adduced at the hearings demonstrated only the normal behavior expected of any member of society, rather than the exemplary behavior required of one who has committed serious crimes and seeks admission to the bar. The fact that petitioner had engaged in his most serious misconduct while studying for the bar indicated to the dissenting panelist the inadequacy of his law school education. Arguing "[t]he study of law consists of more than a mere knowledge of black letter decisions," the dissenter concluded that "[c]learly the system failed [petitioner]."

The review department, although adopting most of the panel's findings of fact, reversed the panel's conclusion that petitioner possessed good moral character. Instead, the department found the evidence of rehabilitation unpersuasive because petitioner was still on probation during the State Bar hearings and his character evidence was suspect. The department also concluded petitioner showed no remorse for his previous criminal conduct and failed to accept responsibility for his acts, further demonstrating that he was not rehabilitated. Consequently, the department unanimously (13-0 vote) refused to certify petitioner for admission to the practice of law.

## II. DISCUSSION

"The fundamental question [is] whether petitioner is a fit and proper person to be permitted to practice, and that question usually turns upon whether he committed or is likely to continue to commit acts of moral turpitude." (*Hightower v. State Bar* (1983) 34 Cal.3d 150, 157 [193 Cal.Rptr. 153, 666 P.2d 10].) ■ When the applicant has previously committed acts of moral turpitude, he must demonstrate that he is rehabilitated and currently possesses the moral qualifications to be a member of the bar. (*Ibid.*; *March v. Committee of Bar Examiners* (1967) 67 Cal.2d. 718, 731 [63 Cal.Rptr. 399, 433 P.2d 191].) In making this determination we give great weight to both the hearing panel's factual findings and the review department's recommendation. (See *In re Kreamer* (1975) 14 Cal.3d 524, 532, fn. 5 [121 Cal.Rptr. 600, 535 P.2d 728].) While the applicant bears the burden of showing that the State Bar's findings are not supported by the evidence or that its recommendation is erroneous, all reasonable doubts are resolved in his favor. (*Siegel v. Committee of Bar Examiners* (1973) 10 Cal.3d 156, 173 [110 Cal.Rptr. 15, 514 P.2d 967].) Once the applicant furnishes enough evidence of good moral character to establish a prima facie case, the burden shifts to the bar to rebut that showing with evidence

of bad moral character. (*Bernstein* v. *Committee of Bar Examiners* (1968) 69 Cal.2d 90, 95 [70 Cal.Rptr. 106, 443 P.2d 570].)

Petitioner's cocaine trafficking clearly involved acts of moral turpitude and demonstrated bad moral character; we have held such offenses to warrant disbarment. (See, e.g., *In re Giddens* (1981) 30 Cal.3d 110.) ■ Unlike disbarment proceedings, in which the State Bar must prove an attorney is unfit to practice, an applicant for certification must show he is morally fit. (*Hallinan* v. *Committee of Bar Examiners* (1966) 65 Cal.2d 447, 451 [55 Cal.Rptr. 228, 421 P.2d 76].) Hence, this court may properly refuse to admit an applicant to practice law upon proof that would not justify an order of disbarment.

■ Several facts make petitioner's conduct particularly egregious. First, such serious criminal activities are all the more reprehensible when committed by a former law enforcement officer and law school graduate. Before any of his arrests petitioner acted as a deputy sheriff in Florida. He testified that in that capacity he received training regarding controlled substances. He also gave more than 80 drug information lectures to school children, warning them that use of illegal drugs "was a bad thing" and could result in adverse physical reactions as well as criminal prosecution. The fact that petitioner's criminal involvement occurred after this history in law enforcement, and while he studied for the bar exam, bespeaks a blatant disregard of the laws he was sworn to enforce, has studied, and now seeks to apply. Second, according to his own testimony, petitioner's primary motivation for his involvement in illicit drug transactions was financial gain. Thus, petitioner's attempt to offer mitigating circumstances for his drug dealing should generally be discounted.[1]

■ Against this background of a serious criminal record, petitioner attempts to meet his burden of proving his rehabilitation and good character. We believe petitioner has not established a prima facie case in this regard. Admittedly petitioner has made progress in upgrading his life since his release from prison. To his credit, petitioner has married, accepted the responsibility of a new baby daughter, stayed out of prison and now holds a steady job. Moreover, we recognize the difficulties an exconvict faces in assimilating himself back into society. (See, e.g., *In re Kreamer, supra,* 14

---

[1] While petitioner argues the review department did not properly consider mitigating factors, such as automobile accidents, business failures, and shattered personal relationships, we feel the department acted properly in according such elements little weight. Petitioner's testimony clearly indicated that his primary motivation for trafficking in drugs was pecuniary; he stated that he wanted money to invest in a lingerie business he was starting. In light of this deliberate decision of a former law enforcement officer and law school graduate to deal drugs for monetary gain, such personal troubles, though indeed tragic, hardly mitigate the serious offenses in this case.

Cal.3d at p. 532 [suffering ignominy of criminal conviction and serving time in penal institution are mitigating factors].) Nevertheless, petitioner's evidence of reformation is simply not sufficient to demonstrate the good moral character required to become an attorney. It is not enough that petitioner kept out of trouble while being watched on probation; he must affirmatively demonstrate over a prolonged period his sincere regret and rehabilitation. As we stated in *In re Rohan* (1978) 21 Cal.3d 195, 203 [145 Cal.Rptr. 855, 578 P.2d 102], "An attorney as an officer of the court and counselor at law occupies a unique position in society. His refusal to obey the law, and the bar's failure to discipline him for such refusal, will not only demean the integrity of the profession but will encourage disrespect for and further violations of the law. . . . 'Furthermore, the legal profession is one which is peculiarly charged with the administration of our laws and therefore it is incumbent upon lawyers to set an example for others in observing the law.' [Citation.]"

Petitioner's primary evidence of rehabilitation consists of the testimony and letters of 33 character witnesses. Among those writing letters, both a psychiatrist, who evaluated petitioner briefly before and after his incarceration, and a substance abuse psychologist, who counseled him informally as a friend, opined that petitioner had been rehabilitated. Letters and testimony from petitioner's employer and professional associates described him as a caring and decent man of personal integrity. Some witnesses described his present involvement in charitable activities, including newspaper and canned food drives. Several old friends emphasized that petitioner's earlier criminal conduct was aberrant behavior traceable to a variety of medical, financial, and physical stresses and that he is a different individual from the man who was arrested in 1982. Finally, six members of the State Bar testified, either in person or by letter: each stated that petitioner had an excellent reputation for honesty and that they had no reservations in recommending him for admission.

■ While such evidence is relevant, we have held that "character testimony, however laudatory" does not alone establish the requisite good character. (*In re Petty* (1981) 29 Cal.3d 356, 362 [173 Cal.Rptr. 461, 627 P.2d 191] [disbarment following theft and forgery convictions].) ■ Further, the review department legitimately viewed some of petitioner's character evidence with skepticism. Our independent review of the letters and testimony indicates that, while the witnesses generally commend petitioner, they do not evince a complete understanding of the extent of his involvement in dealing cocaine. Many of the witnesses believed petitioner to possess an unblemished record prior to his last arrest, as well as after his federal

incarceration.[2] Moreover, quite a few letters attempted to "explain" petitioner's involvement with drugs by emphasizing the social acceptability of cocaine in 1982.[3] Petitioner, however, was not engaged in minor drug use, but in serious drug dealing. If the character witnesses were not aware of the extent and seriousness of petitioner's criminal activities, their evaluations of his character carry less weight.

In addition to finding the character witnesses unpersuasive, the review department also doubted whether petitioner's own testimony exemplified sufficient rehabilitation. During the proceedings, petitioner put forth the proposition that use and sale of cocaine during the early 1980's was considered socially less reprehensible than today. For instance, petitioner testified, "there was no social stigma attached to marijuana, [or] personal, social usage of cocaine. Whether that's right or wrong, that was the environment that not only I grew up in, but I was living. And Hollywood unfortunately tended, with the record and movie industry, to give it sort of a glamorous aura. So other than the fact that it was illegal, no, I didn't [think there was anything wrong with drug sales]—there was no social stigma. It was something I was surrounded with." The review department found such statements demonstrate petitioner's failure to accept full responsibility for his prior conduct. As the department stated, petitioner's "current attitude also gives rise to a lack of remorse and an essential lack of rehabilitation." We find the department's point well taken. Petitioner's involvement in illegal drug dealing indicates he lacked respect for the law and the judicial process. ■ Fully acknowledging the wrongfulness of his actions is an essential step towards rehabilitation. (Cf. *Nadrich* v. *State Bar* (1988) 44 Cal.3d 271, 277-278 [243 Cal.Rptr. 218, 747 P.2d 1146]; *Segretti* v. *State* (1976) 15 Cal.3d 878, 888-889 [126 Cal.Rptr. 793, 544 P.2d 929]; *In re Cohen* (1974) 11 Cal.3d 935, 943 [114 Cal.Rptr. 611, 523 P.2d 651].)

■ Petitioner's failure to seek both continued psychological counseling or assistance in evaluating or treating a possible substance abuse problem further suggests his reluctance to acknowledge the wrongfulness of his past transgressions. It is somewhat difficult to evaluate the full extent of petitioner's rehabilitation because the nature of his psychological or substance abuse problems is not clear. Petitioner denies that he was addicted to cocaine, yet he used it heavily, particularly during his involvement as a drug

---

[2] For instance, one letter stated that the author had never known anyone in the last 17 years who had ever expressed any doubts about petitioner's integrity. Clearly this period encompasses the years when petitioner dealt drugs; yet even then the author, and her acquaintances, believed in petitioner's "good moral character."

[3] In addition to these letters demonstrating a basic misunderstanding regarding the seriousness of petitioner's crimes, the review department viewed such arguments as being "guided" by petitioner. Seemingly well-rehearsed facts, such as the death of college basketball player Len Bias and the subsequent popularity swings in cocaine use, reappeared in no less than four letters.

dealer.[4] Although petitioner submits a letter from a psychiatrist who has treated him in the past, he apparently has not pursued any ongoing psychological counseling.[5] (Cf. *In re Nadrich, supra,* 44 Cal.3d 271, 277.) We do not mean to suggest that petitioner, as a former cocaine user and dealer, *must* obtain counseling or admit addiction in order to show rehabilitation. (Cf. *Hall* v. *Committee of Bar Examiners* (1979) 25 Cal.3d 730, 744-745 [159 Cal.Rptr. 848, 602 P.2d 768].) However, the fact remains that petitioner admitted to having habitually used an illicit drug, without acknowledging the existence of a substance abuse problem. Under such circumstances, voluntarily enrolling in some form of *continuing* counseling or substance abuse program may serve as an indicium of rehabilitation in addition to providing him support in times of future hardship. Similarly, participating in community volunteer programs to help other substance abusers might well demonstrate a recognition of the deleterious effects illicit drug sales have upon individuals and the community as a whole.[6]

Another factor the review department considered in according less weight to evidence of petitioner's recent, postincarceration good conduct was that he was on federal probation until September 1988. As the review department observed, exemplary conduct is demanded of a probationer, whose activities are supervised and overseen by probation officers. "[Petitioner's] being a 'model' prisoner, getting married, or holding a steady job fails to indicate the type of rehabilitation normally expected in this type of case. The majority of [petitioner's] post-incarceration activities constitute what is ordinarily expected as a member of society." Even at the time of the review department proceedings petitioner was still on probation; had he violated his probation, he faced further prison time.

In *Giddens, supra,* 30 Cal.3d at page 116, we ordered an attorney disbarred following his conviction of conspiracy to distribute controlled sub-

---

[4] By petitioner's own estimates, during 1981 and 1982 he ingested one-quarter to one-half a gram of cocaine daily; his coconspirator recalled petitioner's intake as closer to one or more grams per day. While petitioner maintains that he was not addicted to cocaine, he also asserts that the review department did not properly consider his cocaine usage as a mitigating factor.

[5] Petitioner offers the testimony of Dr. William Perry, Ph.D., a clinical psychologist, as evidence of some 60 hours of therapy. However, Dr. Perry clearly regarded petitioner as a friend, not a patient; petitioner did not pay for the sessions and Dr. Perry described the relationship as only "quasi-professional." Such testimony hardly represents the level of detached professionalism necessary to convince this court that petitioner has been genuinely rehabilitated.

Petitioner's second psychiatric witness, Dr. Saul Faerstein, a psychiatrist, is equally unhelpful in disclosing petitioner's present condition. After a few sessions in 1986 and 1987, Dr. Faerstein concluded petitioner no longer suffers from a moderate depression that afflicted him in 1982. While more objective than Dr. Perry, this analysis is simply not evidence of ongoing treatment.

[6] As noted above, petitioner has demonstrated some community involvement since his release from prison; however, he has not shown any effort to aid those upon whom he specifically preyed, namely, drug users.

stances. As here, the attorney submitted substantial good character evidence. We concluded the petitioner, whose offense had occurred seven years previously, had shown insufficient rehabilitation, and we stated: "If anything, the assertion that petitioner's criminal activity was out of character reinforces our conclusion that disbarment with a subsequent opportunity to obtain reinstatement is the appropriate discipline." We further held that on application for reinstatement the attorney should offer "further proof . . . of the requisite 'standard of fitness' during a period when petitioner is *neither on parole* [which apparently had terminated about eight months earlier] *nor under supervision of the bar*." (*Ibid.*, italics added; see *Pacheco* v. *State Bar* (1987) 43 Cal.3d 1041, 1058 [239 Cal.Rptr. 897, 741 P.2d 1138] [admitting applicant on his *second* application, finding adequate showing of rehabilitation since his misconduct ten years earlier, and noting seven years elapsed since he passed bar exam]; *Martin B.* v. *Committee of Bar Examiners* (1983) 33 Cal.3d 717, 726 [190 Cal.Rptr. 610, 661 P.2d 160] [passage of nine years with exemplary record sufficient to show rehabilitation].)

In rebuttal petitioner directs our attention to two cases in which this court found exemplary conduct shortly after and even during probation. First, in *In re Kreamer, supra,* 14 Cal.3d 524, the State Bar recommended a five-year probation, including actual suspension for the first three years, for an attorney convicted of illegal possession and conspiracy to distribute marijuana. We considered evidence of the attorney's rehabilitation as mitigating, even though he was still on federal probation at the time of the disciplinary proceedings, and we placed the attorney on three years' probation, with no actual suspension. In the second case, *In re Nadrich, supra,* 44 Cal.3d at page 278, an attorney had been convicted of possessing, with intent to distribute, 30 grams of lysergic acid diethylamide (LSD) and was sentenced to 7 years in prison. Again we considered evidence of rehabilitation, even though the attorney had been released only two years prior to his disciplinary proceeding. Rather than the recommended disbarment, we concluded a one-year actual suspension and four years' probation was appropriate.

Although petitioner's case bears some factual resemblance to *Kreamer* and *Nadrich,* there is one essential difference: Petitioner is an applicant for certification, not an attorney charged with misconduct. This distinction separates petitioner from the above cases in two ways. First, as an applicant petitioner bears the burden of showing he is morally fit, unlike the proof burden assigned the State Bar in disciplinary proceedings. (Rule X, § 101(a), Rules Regulating Admission to Practice Law; *Pacheco* v. *State Bar, supra,* 43 Cal.3d at p. 1046; *Hallinan* v. *Committee of Bar Examiners, supra,* 65 Cal.2d at p. 451.) The burden of proof is critical in bar admission cases where the State Bar is not claiming that we should accord no weight

whatever to petitioner's evidence of rehabilitation. Rather, the bar asserts the recency of petitioner's probation simply makes his evidence less persuasive, so that he does not meet his burden of proof.

Second, in both *Kreamer* and *Nadrich* this court at least imposed a period of actual suspension and a substantial probation. However, there is no precedent for certifying an applicant with anything less than full status as an attorney. Placing an applicant on immediate probation would contradict the notion that the applicant has met his burden of showing good moral character. Neither *Kreamer* nor *Nadrich* held the evidence of rehabilitation so overwhelming as to allow the attorneys to escape without some discipline. Yet petitioner requests we take exactly such action with him.

### III. Conclusion

Under rule X, section 104(a), of the Rules Regulating Admission to Practice Law, petitioner may reapply for admission two years after denial of his application. At that time, if petitioner shows continued exemplary conduct while unsupervised, his showing of rehabilitation and fitness to practice law may be more persuasive. For the present, in light of the serious nature of petitioner's crimes, and the recency of his release from probation, we decline to admit petitioner to practice.

We adopt the recommendation of the Review Department of the State Bar Court denying petitioner certification for admission to the bar.