COLE, Justice.
Petitioner, the Louisiana State Bar Association, through its Committee on Professional Responsibility, seeks to have the respondent, Charles Z. Ranel, suspended from the practice of law for disciplinary rule violations. We find the respondent violated disciplinary rules 1-102(A)(1), (5) and (6),[1] 2-110(A)(3),[2] 6-101(A)(3),[3] and 9-102(A) and (B)(4)[4] of the Code of Profes *952 sional Responsibility of the Louisiana State Bar Association.[5] It is appropriate respondent be suspended from the practice of law for a period of three years from this date, reinstatement conditioned upon the payment of sums due to the parties discussed hereafter.
PROCEDURE
In LSBA v. McGovern, we traced the mandate and procedure by which the court may sanction members of the bar.
This court has exclusive original jurisdiction of disciplinary proceedings against a member of the bar. La. Const, of 1974, Art. 5, Sec. 5(B). The rules of this court provide for the creation of the bar association, the code of professional conduct, and the procedure in disbarment suits. Rules of Supreme Court of Louisiana, Rule 19 (1973); La.R.S. 37:211, LSBA v. Edwins, 329 So.2d 437 (1976); In re Mundy, 202 La. 41, 11 So.2d 398 (La.1942); Hood, Renewed Emphasis on Professional Responsibility, 35 La.L.Rev. 719 (1975). Under these rules, when the bar association’s Committee on Professional Responsibility is of the opinion that a lawyer is guilty of a violation of law or rule of professional conduct of sufficient gravity to show moral unfitness to practice law, it must institute a suit for disbarment or suspension by a petition which shall be served upon the respondent. Louisiana State Bar Association Articles of Incorporation, art. 15, § 6(a). When issue is joined or when the respondent has not appeared to plead or answer within the time allowed, this court may hear the evidence, or we may appoint a commissioner to take the evidence. Id., section 6(b). Regardless of how the evidence is taken, this court must decide, based on the record in the case, both whether the attorney is guilty of the unethical conduct charged, as well as what penalty is appropriate if disciplinary sanctions are warranted. LSBA v. Edwins, supra; LSBA v. Wheller, 243 La. 618, 145 So.2d 774 (1962). In re Reed, 207 La. 1011, 22 So.2d 552 (1945).
LSBA v. McGovern, 481 So.2d 574, at 576 (La.1986).
The Bar Association must plead the alleged violation, produce evidence of the violation and persuade this court, by clear and convincing evidence, that the violation occurred. Id. at 577; citing La. Const.1974, Art. 5, Sec. 5(B); Louisiana State Bar Association Articles of Incorporation, Art. 15, Sec. 6.
CHARGES
The charges against Mr. Ranel consist of alleged misconduct involving five separate legal matters. The Committee alleges Mr. Ranel failed to act with reasonable diligence and promptness in representing the clients, failed to return unearned legal fees, and failed upon request to promptly deliver a client’s property to him. The Committee further alleges Mr. Ranel made false representations to one or more of his clients concerning the status of their case, failed to respond to lawful demands for information from the committee, and failed to cooperate with the committee in its investigation of the allegations above.
PROCEEDINGS
Five separate complaint letters were sent to the Louisiana State Bar Association in 1985 and 1986 by former clients of Mr. Ranel, and one complaint letter was sent by a chiropractor who treated former clients. The Committee mailed copies of these letters to Mr. Ranel requesting him to re *953 spond to the accusations. Mr. Ranel did not respond. In April of 1986 the Committee issued a subpoena ordering Mr. Ranel to appear at the office of Ms. Ann LaCour Neeb, its assistant counsel, to respond to the complaints made against him. Mr. Ra-nel appeared at Ms. Neeb’s office and asked for an extension of time to respond to the complaints. He stated he suffered from an illness caused by exposure to agent orange. Ms. Neeb gave him until the end of April to answer the complaints. Mr. Ranel did not respond.
The Committee held an investigative hearing on April 17, 1987. The Committee informed Mr. Ranel by a letter dated April 6, 1987, personally served upon him, of his right to be present, to have an attorney present, to introduce documents, and to call and cross-examine witnesses in his behalf. Several of the complainants were present and gave testimony. Mr. Ranel did not attend the hearing.
The Commissioner, Kenneth E. Barnette, held a formal hearing on April 6, 1988. Mr. Ranel was informed of his rights as regards the hearing, including his right to subpoena witnesses and introduce evidence in his behalf. Mr. Ranel was present at the hearing and testified. He did not introduce any evidence to support his testimony. At the time of the hearing he had not responded to any of the complaints made against him.
FACTS
Specification No. 1: In 1983 Lisa A. Plant hired Mr. Ranel to handle an alleged breach of contract by an automobile dealer. Ms. Plant paid Mr. Ranel $100.00. Mr. Ranel gave her four separate court dates, the last of which was June 14, 1985. Mr. Ranel did not appear in court on any of the dates. He did not complete the assignment for which he was retained and, apparently, abandoned his efforts. Ms. Plant made several phone calls and wrote three letters to Mr. Ranel. She was unable to contact him. Mr. Ranel did not attempt to adjust the complaint with Ms. Plant nor did he attempt to refund any portion of the $100.00 paid to him. Mr. Ranel claims he was unable to locate Ms. Plant. He admits he failed to respond to the Committee regarding this complaint.
Specification No. 2: Mrs. Lorena Crook retained Mr. Ranel to represent her in a bankruptcy proceeding. Mrs. Crook paid Mr. Ranel $560.00 to handle the matter and $42.00 for letters to seven of her creditors. Mr. Ranel prepared the petition and Mrs. Crook signed it. For the next eight months she phoned Mr. Ranel’s office to determine the status of her case. He never responded. Ranel said he was unable to file the petition because he needed Mrs. Crook’s signature on a crucial document. ■ He claims he was unable to locate her. Mrs. Crook ultimately went to another attorney who obtained her file from Mr. Ranel. After the Committee instituted proceedings against Mr. Ranel he offered to refund $300.00 of Mrs. Crook’s payment. She refused to accept the money in view of the upcoming Committee hearing. Although Mr. Ranel performed some services for Mrs. Crook he did not complete the task he was retained to accomplish.
Specification No. 3: Elmer Jefferson hired Mr. Ranel to handle a worker’s compensation matter. His complaint is that Ranel failed to forward funds to him from one or more of his worker’s compensation checks. He alleges Mr. Ranel told him the checks were never received. An attorney for the Committee introduced cancelled worker’s compensation checks made out to Elmer Jefferson and endorsed by Mr. Ra-nel. Mr. Ranel testified he had the power to sign checks for Mr. Jefferson and admitted receiving certain checks payable to Mr. Jefferson. Mr. Ranel claims he deducted an amount for legal fees and refunded the remainder to Mr. Jefferson by check. Mr. Ranel was unable to produce any cancelled checks, disbursement sheets, or other documentation to substantiate his testimony. Mr. Ranel has not offered any other response to Mr. Jefferson’s complaint.
Specification No. 4: Leroy Ranel, respondent’s brother, hired respondent to represent his minor sons who were injured in an automobile accident. Dr. Thomas C. Plantz, a Baton Rouge chiropractor, treat *954 ed the boys. It was agreed respondent was to withhold funds from any recovery in the matter to pay Dr. Plantz’s bill. Respondent sent a letter to that effect and also signed a lien document. He then failed to notify Dr. Plantz when a settlement was reached. Dr. Plantz learned of the settlement several months after the fact. He contacted respondent who then paid him $830.00. At the time of the hearing there was still an outstanding balance of $850.00 due Dr. Plantz. Respondent admits $850.00 is due Dr. Plantz.
Specification No. 5: Leroy Ranel com-, plains he gave respondent $582.00 to pay an ambulance bill. The bill was never paid. Respondent contends he did not receive the funds from his brother. Again, respondent failed to cooperate with the Committee’s investigation of the complaint.
Specification No. 6: Leroy and Mary Bridgewater retained Mr. Ranel in October of 1983 to obtain compensation for damages to their land caused by a trespassing oil company. In November of 1985 they tried several times to speak with him. When they finally made contact, Ranel informed them the matter was set for trial November 27, 1985. The Bridgewaters contend Mr. Ranel did not file the suit until November 27,1985. He later told them the judge moved the trial to February 1986. Mr. Ranel testified he intended to settle the claim but did not know who to contact at the oil company. He failed to keep his clients informed, avoided their inquiries, and failed to take the requisite steps to have their suit served upon the opposing party.
MISCONDUCT PROVEN
From the evidence compiled we find clear and convincing proof of the following misconduct. Mr. Ranel neglected to proceed with Lisa Plant’s suit for breach of contract after receiving a $100.00 fee. He also neglected to refund the unearned fee and failed to cooperate with the Committee in its investigation of this matter. His treatment of, Mrs. Lorena Crook’s bankruptcy proceeding lacked the competence and diligence required by the Code of Professional Responsibility. He failed to return unearned fees to Mrs. Crook and failed to respond to the Committee’s requests for information regarding this complaint. He further subjected Mrs. Crook to possible embarrassment and credit problems in the face of her unpaid debts. Mr. Ranel did not give Elmer Jefferson an accounting of the worker’s compensation funds he received in Jefferson’s name. He failed to return the funds belonging to Mr. Jefferson at his request.
We also find Mr. Ranel agreed to withhold a chiropractic fee for Dr. Thomas Plantz from a personal injury claim. He failed to inform Dr. Plantz when a settlement was completed. Mr. Ranel paid $830.00 when confronted by Dr. Plantz, leaving a balance of $850.00 which Mr. Ranel failed to deliver to Dr. Plantz. Again, he did not respond to the Committee’s investigation of this complaint. Additionally, Mr. Ranel failed to respond to his brother’s complaint regarding an unpaid ambulance bill. Finally, Mr. Ranel made false representations to Leroy and Mary Bridgewater regarding the status of their case. He neglected to pursue the matter and failed to cooperate with the Committee in its investigation of this complaint.
CONCLUSION
The Commissioner found Mr. Ranel failed to understand the gravity of the charges against him and did not demonstrate any general demeanor of contrition. He failed to respond to the Committee and appeared at the Commissioner’s hearing unprepared to support his testimony by the production of documents he claimed to have in his files. The Commissioner recommended serious disciplinary action in response to each of the specifications charged.
We find from clear and convincing evidence the respondent grossly neglected legal matters entrusted to him and knowingly failed to perform services requested by his clients. Further, we find respondent made false statements to at least two of his clients regarding the status of their cases. *955 It was not proven whether any of respondent’s clients suffered actual damages as a result of the neglect but he did expose his clients to the stress of unreasonable delays and retained funds to the detriment of all the complainants. Mr. Ranel’s refusal to respond to the complaints against him exhibited a total disregard for the authority of the Committee on Professional Responsibility. The record does not reflect any mitigating circumstances for respondent’s misconduct.
Mr. Ranel had almost two years to prepare a defense to the specifications charged. Nonetheless, he did not bring to the Commissioner’s hearing any of the documentary evidence he claimed to have had in his files and which allegedly would corroborate his testimony. The lack of professional competence evident in Mr. Ranel’s behavior toward the Committee permeates his dealings with his former clients. The numerous complaints against Ranel exhibit a pattern of neglect. He has been deceitful to both himself and to his clients. Finally, he had not attempted to settle accounts with his clients except in one instance shortly before the investigative hearing.
SANCTIONS
The purpose of lawyer disciplinary proceedings is to maintain appropriate standards of professional conduct for the protection of the public from lawyers who have demonstrated an inability or unwillingness to properly discharge their professional duties. The discipline imposed in a particular case is dependent upon the seriousness and circumstances of the offense, fashioned in light of the purpose of discipline, taking into account aggravating and mitigating circumstances. LSBA v. McGovern, supra.
In LSBA v. Boutall, 532 So.2d 1151 (La.1988), we found suspension an appropriate penalty “when a lawyer knowingly failed to perform services for a client and causes injury or potential injury to a client; or a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.” Id. at 1153, citing ABA Standards for Imposing Lawyer Sanctions Sec. 4.42.
LSBA v. Lyons, 491 So.2d 369 (La.1986), closely parallels the case before us. Attorney Lyons seriously neglected three legal matters and lied to at least two of the clients. None of the clients appeared to have sustained any damages from the neglect. As here, however, the neglect involved deceit and misrepresentations which reflect significantly upon the legal system. In Lyons, we found a suspension of two years and refund of fees for services not performed to be appropriate discipline.
Ranel committed several violations of the Code of Professional Conduct. In fashioning sanctions to be imposed we note the absence of any mitigating circumstances. Accordingly, we find a suspension of three years with reinstatement conditioned upon the payment of the monetary losses involved to be appropriate.
DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Charles Z. Ranel be suspended from the practice of law in Louisiana for three years from the date of finality of this judgment, with reinstatement conditioned upon respondent providing proof to the Louisiana State Bar Association of a payment to Lisa Plant of $100.00; a payment to Lorena Crook of $560.00; a payment to Elmer Jefferson of $400.02; a payment to Dr. Thomas Plantz of $850.00; and a payment to Leroy Ranel of $582.00.
Respondent is further ordered to pay all costs of these proceedings.
ATTORNEY SUSPENDED.

. Disciplinary Rule 1-102 — Misconduct.
(A) A lawyer shall not:.
(1) Violate a Disciplinary Rule.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.

. Disciplinary Rule 2-110 — Withdrawal from Employment
(A) In general.
(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.

. Disciplinary Rule 6-101 — Failing to Act Competently.
(A) A lawyer shall not:
(3) Neglect a legal matter entrusted to him.

. Disciplinary Rule 9-102 — Preserving Identity of Funds and Property of a Client.
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
*952 (2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

. The designation and substance of these rules, in effect at the time of the violations, have been superceded by the Rules of Professional Conduct adopted December 18, 1986, effective January 1, 1987.