[S. F. No. 17287.   In Bank.   Aug. 23, 1946.]

In re Petition of JAMES F. GAFFNEY, for Readmission to The State Bar of California.

J. W. S. Butler, Robert A. Zarich, Stanley W. Reckers, Lloyd Buchler, R. B. Hibbitt, C. K. Curtright and Thomas O'Hara for Petitioner.

Jerold E. Weil for Respondent.

CARTER, J.—Petitioner has applied for readmission to practice law in this state after his disbarment by this court (*Gaffney* v. *State Bar*, 20 Cal.2d 735 [128 P.2d 516]).

The application for reinstatement is based upon the ground that petitioner has rehabilitated himself and now possesses the moral qualifications and mental attainments necessary to entitle him to be restored as a member of the bar; and also upon the ground that although the Board of Governors of The State Bar, by a divided vote, failed to make a recommendation for readmission, nevertheless the local committee to which the matter has previously been referred, made favorable findings which are fully supported by the evidence, and unanimously recommended petitioner's reinstatement.

This court has inherent power and authority to reinstate an applicant previously disbarred despite an unfavorable report upon his application by the Board of Governors; the recommendation of that body is advisory only; the final determination rests with this court, and its powers in this respect are plenary, and its judgment conclusive (*In re Lacey*, 11 Cal.2d 699, 701 [81 P.2d 935], and cases cited).

A review of the record has convinced us of the fairness and accuracy of the committee's findings. They state in substance the following: Petitioner, now a man of 60 years of age, was disbarred in the fall of 1942. He immediately ceased the practice of law and has not at any time resumed it. From October, 1942, to April, 1943, he worked as a principal clerk in the shipyards. Because of congested living conditions and lack of proper eating facilities, petitioner then returned to his home at Sacramento where he worked for about two months as an office clerk. He was thereafter employed by the Army Air Force as a counselor, that is, a grievance man acting for employer and employee. Petitioner's income from these activities averaged a little short of $200 a month. In April, 1943, he lost the home which he had built, and with his wife and daughter was obliged to rent an apartment in Sacramento. His entire income has been required to meet the living expenses of his wife and himself. He has not been able to make

complete restitution of the $1,050 of which he defrauded a client (the matter which resulted in his disbarment), but he has made partial restitution to the amount of about half that sum.

In this connection the committee found that it has been impossible for petitioner from his earnings since his disbarment or from his property, to make further restitution, and also that it has been impossible for petitioner, from those sources, to pay certain other indebtedness listed in his petition; that the earnings of petitioner have been sufficient only to support himself and his wife during the period in question.

At the two hearings held by the local committee more than 30 witnesses testified, including a United States District judge, three of the four superior judges in Sacramento County, and all three city municipal judges. Petitioner's application for review was filed on his behalf by seven attorneys, and was concurred in by about 50 other members of the bar. Informal notice of the proceeding was given to the president of the Sacramento County Bar Association, but no appearance was made on behalf of the association to protest reinstatement. Petitioner's main debtor, a woman who has held his note for $3,500 since 1939, appeared as a witness and attested her complete confidence in petitioner and her indifference to his slowness in paying off the note. Convincing evidence was given of outstanding ability on the part of petitioner in the performance of work undertaken since his disbarment.

The local committee found "that since his disbarment the conduct of petitioner has been beyond reproach; that he has kept himself steadily employed during that period; has supported himself and his wife, without borrowing from friends or relatives; and that he has in all ways comported himself as an honest citizen; that he has made such efforts as time and opportunity made practicable to keep himself abreast with the developments of the law and in condition touching his learning of law, to resume the practice thereof if he be reinstated . . . that the petitioner has accepted in a proper spirit the penalty of his disbarment, and has made every reasonable effort thereafter to rehabilitate himself from the standpoint of morals and good conscience; that he has taken his punishment in proper spirit and has constantly by his conduct evidenced his appreciation of the gravity of his offenses, for which he was disbarred, and has manifested a steady determination to rehabilitate himself. . . . That the petitioner

has rehabilitated himself in respect of the conduct for which he was disbarred, and that he is now possessed of the moral qualifications and the learning in law required for admission to practice law in the State of California.''

The evidence abundantly supports these findings and they express the views of this court upon a review of the record. Undue emphasis has been placed upon petitioner's failure to have made complete restitution to his defrauded client. In this connection the language found in the case of *In re Andreani,* 14 Cal.2d 736, at pages 749-750 [97 P.2d 456], is pertinent. As there said in part, '' 'The law is interested in the regeneration of erring attorneys, and in the enforcement of a sound discipline its disposition ought not to be to place unnecessary burdens upon them.' The 'door of hope' should no more be conclusively or finally shut as to them than it should be thus closed as against any other person who has erred and consequently may have suffered a somewhat similar penalty through the disciplinary functioning of the law. Reformation and regeneration are open to any man and, when effected, should merit a just reward. . . . In reaching a fair conclusion on the question of reformation in such a matter, the favorable testimony of acquaintances, neighbors, friends, associates and employers with reference to their observation of the daily conduct and mode of living of an attorney who has suffered disbarment should weigh heavily in the scale of justice. Furthermore, in cases such as the one here concerned, which involve a charge of misappropriation of funds, it should be clear that although restitution may seem to indicate repentance, such act in itself 'works no magic.' Nor does the failure to restore, in whole or in part, definitely establish lack of contrition. The importance of making restitution, and a conclusion respecting the weight which should be attached thereto, should be determined largely by the financial or other ability of the attorney to restore that which he has misappropriated, as well as by his attitude of mind regarding the matter. A wealthy attorney who has suffered disbarment should not be commended too highly for the restoration of a sum of money, however great, where such act would involve no appreciable hardship on him. Nor should one in straightened circumstances be condemned for failure to make restitution, where the return of a comparatively insignificant amount might involve great sacrifice. In the matter of making financial amends, each should be judged not only by his ability to

restore, his sacrifice of financial advantages or bodily comforts of himself or family, but also by his attitude toward the subject as evidenced by a spirit of willingness, earnestness and sincerity. From a consideration of the foregoing, therefore, in the instant matter, it would appear that greater weight might have been given to the recommendation of the local administrative committee—which not only had the opportunity to observe directly the petitioner and the numerous witnesses and to consider the testimony in the first instance, but also heard the matter anew after admonition to give careful attention to the question of rehabilitation. And if reformation may be 'proved' by testimonies of meritorious conduct, the conclusion must be that petitioner has fully established his right to an order of reinstatement in the practice of the law.''

It is ordered that the petitioner be and he is hereby restored as an attorney and counselor of this court, and that his name be reinstated upon the roll of attorneys thereof upon payment of the fees and taking the oath required by law, and that he be entitled henceforth to practice in all the courts of this state.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.