688 P.2d 329

**In the Matter of Mary Ann ORTEGA,
Attorney at Law.**

**No. 15520.**

Supreme Court of New Mexico.

Sept. 24, 1984.

of disciplinary proceedings conducted pursuant to NMSA 1978, Rules Governing Discipline, R.10 (Repl.Pamp.1983), wherein Attorney Mary Ann Ortega (Ortega) was found to have committed seventy-nine (79) separate violations of twenty-two (22) rules of the Code of Professional Responsibility, the Court adopts the findings and recommendations of the Disciplinary Board.

Ortega engaged in a number of unauthorized disbursements from $35,000 provided to her from her clients, Lloyd and Deborah Buchhorn, for the incorporation of a business with a third person. She failed to place this money in an interest-bearing trust account for her clients and did not disclose that the third person of their proposed business was a close friend of hers. Ortega placed the $35,000 in her attorney trust account, and in collaboration with the third person, disbursed all the funds within two months. She refused the Buchhorns' request for an accounting or return of the money. Such conduct violates NMSA 1978, Code of Prof.Resp.Rules 1–102(A)(4), 5–105(B), 5–105(C), 2–106, 7–101(A)(3), 9–102(B)(3) and 9–102(B)(4) (Repl.Pamp.1982).

In addition, Ortega represented Ramona Rowenhorst in a divorce action. Ortega did not advise her client of $7,664.82 received by Ortega as part of the property settlement and did not attempt to obtain the remaining funds due her client from Mr. Rowenhorst. Ortega also advised her client to disregard the court's order that certain household items should be auctioned and the proceeds divided between the parties. When the client sold the items for a lesser amount, the husband filed a demand for the amount ordered by the court and was awarded the greater sum plus attorney fees. Ortega did not advise her client of this award and did not tell her that she had promised to pay the husband out of the funds which Ortega should have been holding in trust. Bank records indicate that the balance in Ortega's trust account was far below what she should have been holding for her client. Four months elapsed, and Ortega did not

## ORDER

This matter having come before this Court on August 1, 1984, after completion

pay the judgment awarded to Mr. Rowenhorst or forward any money to her client. After being ordered by the Honorable John W. Brennan, District Judge, several times to appear and show cause why she should not be held in contempt, Ortega tendered to the district court a check from her trust account for Mr. Rowenhorst. Ortega had ignored a number of the district court's orders. The check was dishonored for insufficient funds. At a subsequent show cause hearing, Ortega appeared and made several misrepresentations to the district court. Ortega was held in contempt but allowed to purge herself by paying the funds due to her client's husband and her client, which Ortega did a month later. Such conduct violates NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 6–101(A)(3), 7–101(A)(3), 7–102(A)(5), 7–106(A), 9–102(B)(1), 9–102(B)(3) and 9–102(B)(4) (Repl.Pamp.1982).

■ During the spring of 1982, Ortega received approximately $26,700 from her client, Harry Buchanan. Ortega was at that time representing Mr. Buchanan in post-decree divorce proceedings in which his former wife was attempting to collect unpaid child support. Ortega filed motions on behalf of her client and represented to the court that Mr. Buchanan had no income and was totally dependent on his new wife for support. In a hearing before the Honorable Rozier Sanchez, District Judge, Ortega knowingly permitted her client to testify that he had no income. Ortega did not advise the court of the fraud perpetrated by her client. Judge Sanchez relied on these misrepresentations and reduced Mr. Buchanan's child support obligations. Ortega's conduct violates NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 7–102(A)(5), 7–102(A)(7) and 7–109(A).

■ In February of 1983, Ortega appeared at the office of the disciplinary counsel and gave testimony under oath concerning the allegations of her misconduct which were then under investigation. During her deposition, Ortega perjured herself at least eight separate times. Such conduct violates NMSA 1978, Code of Prof. Resp. Rules 1–102(A)(4) and 1–101(C).

■ During the year 1982, Ortega maintained an attorney trust account at an Albuquerque bank. Bank records show that the balance in the account frequently fell below what her ledgers indicated it should have been. In addition, Ortega deposited in the account funds belonging solely to herself. In August of 1982, Ortega converted her attorney trust account into a general office account in an effort to conceal her assets from the Internal Revenue Service. She opened a second trust account at a different bank with an initial deposit of $60, though her records indicated at the time that she was or should have been holding nearly $9,000 in trust for a number of clients. Ortega failed to maintain accurate records of client funds and converted them to her own use. Such conduct violates NMSA 1978, Code of Prof. Resp. Rules 1–102(A)(4), 1–102(A)(6), 7–101(A)(3), 9–102(A), 9–102(B)(3) and 9–102(B)(4).

■ During the year 1981, Ortega agreed to undertake appeals in three criminal cases for Robert Esquivel. She represented to him and his mother, Ann Esquivel, that she was proficient at criminal appellate work, although in fact she had never filed an appeal in a criminal matter. She asked for a fee of $35,000 and was given money and property valued at $33,796.64, which she accepted. Ortega filed notices of appeal in two of the cases and did nothing further. Ortega repeatedly told her client that the appeals were pending and would be decided in his favor. In the third case, Respondent filed a motion to vacate sentence in the United States District Court. She initially advised her client's family that she had prevailed on the motion. Later, she admitted to them that the motion had been denied and that she was in the process of appealing the denial. The motion was denied, and Ortega did not file an appeal. Ortega's conduct violates NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(4), 1–102(A)(5), 1–102(A)(6), 2–106,

6–101(A)(1), 6–101(A)(3), 7–101(A)(1) and 7–101(A)(2).

Moreover, part of the fee paid to Ortega by Ann Esquivel included the assignment of a real estate contract in the amount of $18,796.64 plus interest. In proceedings on a motion filed by Robert Esquivel to determine whether he should be allowed to reinstate his appeals, Ortega was called as a witness. She testified under oath before the Honorable Richard Traub, District Judge, that she no longer was the owner of the contract and had sold it for $8,500. At the time of her testimony, Ortega was still the owner of the contract and continued to be the owner until December 1983. Ortega's conduct violates NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(3), 1–102(A)(4), 1–102(A)(5) and 1–102(A)(6).

In addition, Ortega advised Robert Esquivel that she could assist him with carrying out the terms of the property settlement of his recent divorce. Under the terms of the settlement agreement, the community residence was to be sold with the proceeds first applied to satisfy outstanding community debts and any remaining amounts divided equally among the parties. Ortega informed Mr. Esquivel that this could be facilitated if he would quitclaim his interest in the property to her. Ortega prepared a quitclaim deed, had Mr. Esquivel sign it, and recorded the deed. Ortega then appeared in bankruptcy court, where Mr. Esquivel's ex-wife was in the process of declaring bankruptcy, and represented to the court that her client's interest in the residence had been deeded to her in payment of legal fees for criminal and divorce cases she was handling for him. Based upon this misrepresentation, Ortega was allowed to purchase the ex-wife's interest in the home for $2,000 and became sole owner of the property. Ortega's judgment creditors thereafter placed liens on the property. Ortega also failed to make the mortgage payments, and the property was foreclosed upon. Such conduct violates NMSA 1978, Code of Prof. Resp. Rules 1–102(A)(4), 1–102(A)(6) and 7–101(A)(3).

Ortega represented Reilly Johnson in a criminal post-conviction matter when Mr. Johnson was served with a complaint in a wrongful death action. Johnson turned the matter over to Ortega who promised to file an answer on his behalf. Johnson subsequently attempted to determine whether Ortega had filed the answer. Ortega did not file an answer within the appropriate time limits but billed Johnson's mother for doing so. Johnson later learned from a newspaper article that a $300,000 default judgment had been entered against him. Ortega's conduct violates NMSA 1978, Code of Prof.Resp. Rules 1–102(A)(5), 6–101(A)(3), 7–101(A)(1) and 7–101(A)(3).

Ortega was counsel of record for one of the defendants in a civil action pending before the Honorable Phillip Ashby, District Judge. Counsel for the plaintiff moved for summary judgment, and Ortega wrote to opposing counsel asking that the motion hearing be vacated since her client had filed for bankruptcy. On the date of the hearing several weeks later, Ortega represented to Judge Ashby that she had personally filed the bankruptcy petition moments before the hearing. Based upon this representation, Judge Ashby found he had no jurisdiction to grant summary judgment against Ortega's client. Records at the bankruptcy court show that a bankruptcy petition was not actually filed by Ortega on behalf of her client until three days after the hearing before Judge Ashby. Such conduct violates NMSA 1978, Code of Prof. Resp. Rules 1–102(A)(4), 1–102(A)(5), 1–102(A)(6) and 7–102(A)(5).

The record shows that Ortega received timely notice of each and every hearing or deadline for filing pleadings or objections to pleadings in this matter. However, Ortega failed to appear at the hearing, to file any requested findings, to file objections to the committee's findings and recommendations, or submit a brief or request any oral argument before the Disciplinary Board. Ortega also failed to appear before this Court at the hearing held to determine

whether the Board's findings and recommendations should be adopted.

IT IS HEREBY ORDERED that Ortega be disbarred from the practice of law.

IT IS FURTHER ORDERED that:

1. Under NMSA 1978, Rules Governing Discipline, R. 18 (Repl.Pamp.1983), the Court grants the Board's request that an attorney be appointed to inventory Ortega's open files and take any actions necessary to protect the interests of the clients until they can obtain new counsel. Costs of this inventory and any costs incurred by any client as the result of Ortega's disbarment will be assessed against Ortega upon an appropriate showing to this Court;

2. The record of these proceedings and all exhibits now in the Court's possession will be made available to the District Attorney of Bernalillo County for a determination of whether criminal charges should be brought against Ortega; and

3. As a condition for application for reinstatement, Ortega shall provide proof of satisfaction that she has made restitution to the following persons in the amount of $30,000 to Ann Esquivel, $2,000 to Robert Esquivel, and $2,433.02 to Romona (Rowenhorst) Waldrup.

Costs in the amount of $5,058.85 are hereby assessed against Ortega and must be paid to the Disciplinary Board no later than October 1, 1984.

This order is to be published in both the *New Mexico Reports* and the State Bar of New Mexico *News and Views.*

IT IS SO ORDERED.

RIORDAN, J. (specially concurring.)

RIORDAN, Justice (specially concurring.)

I concur in the Court's holding in this disciplinary action. I do not join in the opinion because I disagree with the order of restitution.

First, I do not believe that Ortega should ever be allowed to practice law again or be encouraged to reapply for admission.

Second, the order of restitution may mislead the persons who have a cause of action into relying on our order instead of bringing a lawsuit against Ortega and that reliance would be misplaced.

Finally, I have serious questions as to whether the Court has authority to order restitution without notice or an opportunity to be heard on that issue.