[No. S008378. Dec. 11, 1989.]

RICHARD M. HIPPARD, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

**COUNSEL**

Larson & Weinberg, Joel C. Johnson and Doron Weinberg for Petitioner.

Diane C. Yu, Truitt A. Richey, Jr., and Richard J. Zanassi for Respondent.

## OPINION

**THE COURT.**—This is a proceeding to review the State Bar's denial of Richard Hippard's petition for reinstatement to the practice of law. We hold that petitioner's discharge in bankruptcy of indebtedness to clients arising from misconduct did not preclude the State Bar from considering, as an indicator of rehabilitation, petitioner's efforts, if any, to make restitution; that petitioner did not meet his burden of demonstrating rehabilitation because he failed to prove either an inability to make restitution in whole or in part, or an objectively verifiable effort to make restitution reasonably related to his ability to pay; and that the appropriate showing regarding restitution must be made before the granting of reinstatement, and not thereafter as a condition of reinstatement. We conclude petitioner should not be reinstated at this time.

### FACTS

Petitioner was admitted to the practice of law in 1966. The State Bar initiated three separate disciplinary proceedings against petitioner based on misconduct that occurred between 1971 and 1975. In one of the proceedings, the Local Administrative Committee of the State Bar recommended in June 1976 that petitioner be disbarred. The recommendation was based on the finding that petitioner had misappropriated $3,967.66 from a client, Maxine Peairs. It was made after the entry of a judgment in favor of the client based, in part, on judicial findings that petitioner had converted funds and had wilfully and knowingly engaged in conduct which created an undue hardship on his client in breach of his fiduciary duties.

Thereafter, in August 1976, petitioner submitted his resignation to the State Bar. The Board of Governors adopted a resolution recommending acceptance by this court of petitioner's resignation subject to the completion of proceedings to perpetuate the evidence in the remaining two pending disciplinary matters. Petitioner and the State Bar then entered into "Stipulations and Admissions" in both of the remaining proceedings. Those stipulations and admissions, signed by petitioner on January 18, 1977, address a total of five counts and numerous instances of misconduct for the period 1972 to 1975.

Petitioner admitted the commission of the following acts of misconduct: (1) seven instances of borrowing money from clients either for himself or, in one instance, for a friend, totaling more than $22,000, without providing security or disclosing his poor financial condition and his probable inability to repay; (2) one instance of advising a client to loan funds at a usurious rate; (3) three separate instances of abandoning clients; (4) four instances of

knowingly issuing checks drawn on either a closed account or on accounts with insufficient funds; (5) two instances of misappropriating funds from clients; (6) one instance of fraudulently representing to his client and to the United States Bankruptcy Court in the client's bankruptcy case that funds he had misappropriated had been disbursed to creditors; and (7) one instance of falsely representing to the State Bar that he had sent a check to one of his creditors.[1]

In February 1977, we accepted petitioner's voluntary resignation without prejudice to further disciplinary proceedings in the event he should thereafter seek reinstatement. We also ordered petitioner to comply with rule 955, California Rules of Court (hereafter rule 955), subdivisions (a) and (c) within 60 and 70 days, respectively.[2] Petitioner failed to do so.

Between 1976 and December 1979, petitioner worked as a sales agent for a real estate company. During that period, his earnings increased from approximately $15,000 to $27,500 a year. From 1977 to 1981, petitioner underwent professional counseling for what his therapist described as a "me-first" attitude that resulted in a "charming pattern of pushiness and aggressive extraction of supplies from the environment, feeling he has the right to whatever he needs." Petitioner apparently has not sought or received counseling since 1981.

In April 1980, petitioner filed for bankruptcy, listing $88,762 as debts (including 24 judgments against him in the sum of approximately $58,000) and $3,520 as the value of his property. A number of petitioner's debts, including obligations to a number of his clients and to the Client Security Fund, were discharged by the bankruptcy court. Not discharged were petitioner's outstanding tax obligations and a judgment against him based on fraud (the misappropriation of funds from client Maxine Peairs). Petitioner has never repaid Maxine Peairs.

Between 1980 and 1984, petitioner worked for six different firms selling real estate, and for a brief period he was employed at an executive placement firm. He earned $10,000 in 1980; $33,900 in 1981; $9,500 in 1982;

---

[1] Two of petitioner's clients subsequently obtained repayment for some of their losses from the State Bar Client Security Fund (hereafter Client Security Fund).

[2] The relevant portions of rule 955(a) require an attorney to: (1) notify clients and any co-counsel of his or her resignation, (2) make arrangements to deliver and deliver to clients and cocounsel any papers and property to which the client is entitled, (3) refund unearned fees, and (4) notify opposing counsel in pending litigation of his or her resignation and file a copy of the notice with the court or other tribunal before which the litigation is pending. Subdivision (c) requires the attorney to serve on the State Bar and file with this court an affidavit of compliance with the provisions of rule 955. The affidavit must set forth an address where communications may be directed to the attorney.

$19,545 in 1983; and $39,400 in 1984. In January 1984, petitioner became a self-employed legal assistant for John Trump, a San Francisco solo practitioner. He has worked full-time for Mr. Trump since that time, earning $36,000 a year.

Petitioner's marriage ended in an uncontested divorce in 1975. He has three children. Since his divorce, petitioner has paid child support and contributed to the costs of his children's education. In January 1987, when the petition for reinstatement was filed, petitioner's 3 children were 23, 21, and 16 years old. Petitioner testified that he has always believed he was morally, if not legally, obligated to repay his debts to his former clients. However, between 1980 and now, petitioner has not repaid his former clients any of the sums he had improperly obtained or converted. Although petitioner has stated he believes he may have made partial payments to some of his former clients before 1980, the record is inadequate to permit evaluation of such payments.

### STATE BAR COURT PROCEEDINGS

The petition for reinstatement sets forth petitioner's divorce in 1975, his family background, his resignation, a brief summary of the disciplinary proceedings that recommended disbarment, his occupational history since 1976, his earnings and expenses, and a brief discussion of 15 lawsuits pending against petitioner at the time of his resignation and their outcome. The petition .cites as justification for readmission the passage of 10 years since petitioner's voluntary resignation; his assertion that he has stabilized his life and begun to control his finances; the success of his therapy; and a number of testimonial letters from members of the legal profession and from friends, associates, and former clients. The testimonials include a letter from Attorney John Trump (petitioner's employer), stating, among other things, that petitioner has learned from his past misconduct; paid his debt to society; and, if readmitted, would be "a welcome addition to our legal staff."[3]

---

[3] Although the record contains several references to petitioner's being assured of a job with Mr. Trump if petitioner is successful in getting reinstated, it appears from the record that the references may well be to petitioner's being *associated* with Mr. Trump in the sense of sharing expenses and overhead and not as an *associate* in an employer-employee relationship. Petitioner is presently an independent contractor. Mr. Trump testified at the hearing that his practice is "a sole proprietorship but associated with four other attorneys for purposes of sharing overhead and expenses." The distinction is also suggested by the following colloquy between the principal referee and Mr. Trump at the hearing: "MR. CARSON [principal referee]: You have indicated to us that you would offer an associate position to petitioner, is that correct? [¶] THE WITNESS [Mr. Trump]: That's correct. [¶] MR. CARSON: In that context, would you require him to be bonded and insured? [¶] THE WITNESS: No, and if I did, I wouldn't offer him that position. [¶] MR. CARSON: Would your office provide insurance coverage for him as an associate? [¶] THE WITNESS: No, sir." Despite the ambiguity of the

Following an evidentiary hearing at which petitioner testified, a three-member hearing panel of the State Bar unanimously recommended that the petition be denied. The hearing panel made these findings: (1) petitioner had misappropriated $3,967.66 from client Maxine Peairs, (2) disciplinary proceedings were pending against petitioner when he resigned from the State Bar, (3) he continued to borrow money from clients without repayment schedules, (4) he made false statements to the State Bar relating to a check for an overdraft being in the mail, (5) petitioner encouraged a client to give false testimony in a bankruptcy proceeding, (6) he named clients from whom he had borrowed money as creditors in his petition in bankruptcy, (7) he has made no effort to repay in whole or in part any of the funds he obtained from clients despite his having been gainfully employed in recent years, and (8) he has established the requisite knowledge of the law to be qualified to practice. The hearing panel concluded that the evidence "clearly and convincingly supports the conclusion that Petitioner is not rehabilitated. . . ." In support of its conclusion, the hearing panel specifically cited petitioner's continued borrowing of money from friends, paying some and not others, and indulging his own interests rather than repaying clients or the Client Security Fund. The panel determined "[t]he overwhelming evidence clearly supports the conclusion that the Petitioner has done little to rehabilitate himself. . . ."

By a vote of nine to two, the Review Department of the State Bar adopted the findings and conclusions of the hearing panel. In addition, it found that petitioner wilfully failed to comply with rule 955, as ordered by this court, "until after he had applied for reinstatement in 1987." It cited petitioner's insufficient efforts to repay his clients or the Client Security Fund and his noncompliance with rule 955 as clearly and convincingly supporting the conclusion that he did not sustain his burden of showing exemplary conduct over an extended period of time. It then denied, again by a vote of nine to two, the petition for reinstatement. One of the referees who had voted to deny the petition noted that the issue of petitioner's rehabilitation presented a close question. The same referee, joined by another, also expressed the view it was unfortunate that reinstatement could not be accepted with conditions.

DISCUSSION

1. *Burden of Proof*

█ In seeking reinstatement, petitioner bears a heavy burden of proving rehabilitation. (*Calaway* v. *State Bar* (1986) 41 Cal.3d 743, 745 [225

---

record on this point, it is nevertheless clear from Mr. Trump's supporting letter and testimony that in his view petitioner should be reinstated.

Cal.Rptr. 267, 716 P.2d 371]; *Tardiff* v. *State Bar* (1980) 27 Cal.3d 395, 403 [165 Cal.Rptr. 829, 612 P.2d 919].) He must show by the most clear and convincing evidence that efforts made towards rehabilitation have been successful. (*Feinstein* v. *State Bar* (1952) 39 Cal.2d 541, 546-547 [248 P.2d 3].) The evidence presented is to be considered in light of the moral short-comings that previously resulted in discipline. (*Tardiff, supra,* 27 Cal.3d at p. 403; *Roth* v. *State Bar* (1953) 40 Cal.2d 307, 313 [253 P.2d 969].)

■ This court does possess the plenary power to reinstate an individual to the practice of law notwithstanding the findings and recommendations of the State Bar to the contrary. The existence of this authority, however, does not nullify the rule that the State Bar's findings and decision are entitled to great weight. (*Tardiff, supra,* 27 Cal.3d at p. 404.) As we observed in *Feinstein, supra,* 39 Cal.2d at pages 547-548: "Although this court has plenary power to reinstate an applicant previously disbarred, it has always accorded the greater deference to the recommendation of The State Bar and its administrative committee. [Citation.] Only where the record clearly and convincingly demonstrates that the applicant possesses an acceptable appreciation of the duties and responsibilities of an attorney at law in relation to his clients and the courts may a decision overruling the unfavorable action of the Board of Governors be justified. [Citation.]"[4]

In this case, following an evidentiary hearing at which eight witnesses, including petitioner, testified, the hearing panel unanimously recommended against reinstatement. The review department adopted the hearing panel's recommendation. (See *In re Jones* (1971) 5 Cal.3d 390, 399 [96 Cal.Rptr. 448, 487 P.2d 1016]; *Feinstein* v. *State Bar, supra,* 39 Cal.2d at p. 547; cf. *Resner* v. *State Bar* (1967) 67 Cal.2d 799, 801, 807 [63 Cal.Rptr. 740, 433 P.2d 748].)

## 2. *Restitution and Bankruptcy*

■ Petitioner contends that he satisfied his burden of proving rehabilitation, and that the State Bar erred in concluding he has made insufficient efforts to repay clients or the Client Security Fund. He maintains that the denial of reinstatement based on his failure to repay debts discharged in bankruptcy in the absence of a clear showing of financial ability to do so

---

[4] Generally, the issue of the propriety of reinstatement arises after disbarment. (E.g., *Calaway, supra,* 41 Cal.3d at p. 745; *Tardiff, supra,* 27 Cal.3d at p. 398.) Here, petitioner resigned with disciplinary proceedings pending against him. The distinction does not significantly affect this case. As noted earlier, petitioner tendered his resignation after the Local Administrative Committee of the State Bar recommended disbarment, and during the pendency of two other disciplinary proceedings encompassing numerous additional acts of misconduct.

contravenes due process and undermines the purpose of the bankruptcy laws.

We recently addressed the propriety of imposing restitution as a condition of probation following a discharge of the underlying debt in bankruptcy. In *Brookman* v. *State Bar* (1988) 46 Cal.3d 1004, 1008 [251 Cal.Rptr. 495, 760 P.2d 1023], we reiterated that the purpose of attorney discipline is to protect the public from specified professional misconduct and at the same time rehabilitate the attorney. Because restitution is not imposed *solely because* the attorney has failed to pay a debt discharged in bankruptcy, we held that such a requirement does not violate the bankruptcy laws.[5] (*Brookman, supra,* at pp. 1008-1009.) We further observed in *Brookman* that restitution "serves the state interest of rehabilitating culpable attorneys (and protecting the public) by forcing the attorney to 'confront in concrete terms, the harm his actions have caused.' " (*Id.* at p. 1009, quoting *Kelly* v. *Robinson* (1986) 479 U.S. 36, 49, fn. 10 [93 L.Ed.2d 216, 228, 107 S.Ct. 353].) For the same reasons, the State Bar may in its evaluation of a petition for reinstatement consider the efforts, if any, made towards restitution as an indicator of rehabilitation.

Petitioner correctly argues that restitution in and of itself is not necessarily determinative of whether rehabilitation has been proven. (*Resner, supra,* 67 Cal.2d at p. 810.) Restitution is to be considered as a factor in the overall factual showing made by the individual seeking reinstatement. The weight that should be attached to whether restitution has been undertaken in whole or in part is dependent upon the applicant's ability to restore the misappropriated funds as well as the attitude expressed regarding the matter. (*In re Gaffney* (1946) 28 Cal.2d 761, 764 [171 P.2d 873].) If the overall factual matrix presented in the specific case so warrants, restitution need not be of the full amount misappropriated. (*Ibid.*) The ability to make restitution in relation to the overall amounts involved may be such that a requirement of full restitution would be the practical equivalent of a permanent preclusion of reinstatement, either because it would simply be beyond the applicant's financial capability or because the burden over a period of time would be sufficiently onerous as to be economically destructive. (See *Resner, supra,* 67 Cal.2d at pp. 810-811; *In re Gaffney, supra,* 28 Cal.2d at pp. 764-765.) In this context, the significance of restitution is its probative value as an indicator of rehabilitation, not the repayment of the underlying indebtedness.

---

[5] Title 11, section 525(a) of the United States Code provides in relevant part: "[A] governmental unit may not deny, revoke, suspend or refuse to renew a license . . . of . . . a bankrupt or a debtor under the Bankruptcy Act . . . *solely because* such bankrupt or debtor . . . has not paid a debt that . . . was discharged under the Bankruptcy Act." (Italics added.)

However, an applicant's inability to make full restitution does not preclude the State Bar, in evaluating rehabilitation, from considering whether the applicant has made any efforts at all at restitution.[6] Restitution is fundamental to the goal of rehabilitation. ■ Where, as here, the misconduct has resulted in appreciable pecuniary loss to the applicant's clients, the State Bar may properly consider the absence of an applicant's efforts to make any restitution as an indicator of rehabilitation. (See *Brookman, supra,* 46 Cal.3d at p. 1009.)

Petitioner maintains that the absence of any repayments since 1980 does not support the State Bar's recommendation against reinstatement, because the State Bar denied his petition for reinstatement without regard to his ability to pay and despite his uncontradicted evidence of inability to pay.

A review of the record in this case, including the transcripts of the evidentiary hearing, does not compel the conclusion that petitioner met his burden of establishing inability to make any restitution. The record indicates the existence of a large number of judgments against, and other financial obligations of, petitioner. It describes what has occurred with respect to some of the judgments and obligations and contains statements that petitioner made some unspecified repayments to clients prior to his bankruptcy and that he made largely unspecified payments on numerous other obligations.

Petitioner has made an insufficient showing of an inability to make even partial restitution or an objectively verifiable effort to make restitution reasonably related to his ability to pay. The record lacks specificity regarding the numerous obligations and payments asserted by petitioner. The evidence submitted by petitioner as to his income and expenses does not demonstrate a complete inability to pay.[7] The burden was on petitioner to

---

[6] If we allowed an attorney's inability to make *full* restitution to excuse the obligation to make *any* restitution, we would tend to relieve those attorneys whose misconduct resulted in significant financial losses to their clients from an obligation imposed on those attorneys whose misconduct was less economically damaging and, perhaps, much less serious. This would be contrary to the purposes of attorney discipline.

[7] The petition for reinstatement sets forth petitioner's income since 1976 and his expenses as of the date of filing. His income tax returns for the years 1983, 1984, and 1985 were submitted as exhibits. A review of this information for the year 1985 discloses a monthly income of $3,000, monthly expenses of $1,015, and monthly income tax liabilities of $175. The difference of $1,810 a month between income and expenses plus taxes does not demonstrate a complete inability to pay. While there may be other expenses or considerations that affect this analysis, it is not incumbent upon either the State Bar or this court to attempt to ascertain such financial considerations.

The record also contains a passing reference to petitioner's having "voluntarily undertaken a program of repayment in monthly installments of $100 pending his readmission." Unfortu-

establish inability to pay. Because petitioner has not shown an inability to pay, his assertion that the State Bar violated due process by penalizing him for his impecunious position is not supported by the record.

### 3. *Other Evidence of Rehabilitation*

 Petitioner contends that, apart from the issue of restitution, he presented overwhelming evidence of rehabilitation. Because, as explained earlier, the absence of restitution or a thorough showing of an inability to make any restitution is a significant factor in evaluating rehabilitation, petitioner's remaining evidence must be quite convincing to satisfy his burden of establishing rehabilitation.

Although petitioner's other evidence of rehabilitation is appreciable, it is not of sufficient strength for us to reject the State Bar's recommendation. Petitioner has submitted twenty-seven letters of support: fifteen from members of the bar; one from a superior court judge; nine from friends, employers and coworkers; and one from his former therapist. Of those letters, nine are from individuals who have known petitioner since before his resignation. These testimonials, particularly those submitted by members of the bench and bar and those from persons who have known petitioner for a number of years, are entitled to great weight. But they do not constitute conclusive evidence and are not necessarily determinative. (*Pacheco* v. *State Bar* (1987) 43 Cal.3d 1041, 1053 [239 Cal.Rptr. 897, 741 P.2d 1138].) In addition to the letters, eight individuals, including petitioner, testified at the evidentiary hearing in favor of the petition for reinstatement.

Petitioner's evidence does indicate substantial progress towards rehabilitation. It discloses, for example, that petitioner has always been a good father to his children and has, since approximately 1982, regularly met his child support obligations. It also indicates that following his resignation petitioner did not conceal and, when appropriate, fully disclosed his former problems to his employers and others. He did seek, and benefit from, therapy in the late 1970's and early 1980's. His evidence further supports the conclusion that he has diligently performed his tasks and earned the respect of his coworkers and employers since his undertaking of legal assistance services for Attorney Trump. The passage of an appreciable period of time is also an appropriate consideration.

However, the evidence is not unequivocal. Several of the witnesses testified that they would feel a moral obligation to repay the funds improperly

nately, petitioner again fails to provide any specifics or to relate the amount to ability to pay. In this context, the setting aside of $100 a month hardly constitutes a repayment "program." The fact that the setting aside of the funds did not begin until after the petition for reinstatement was filed and was not referred to until the evidentiary hearing negates its probative value in establishing rehabilitation.

obtained from clients if they had the financial ability to do so. Several of the testimonial letters were of the same view, and suggested the taking and passing of an ethics test. Petitioner's former therapist has suggested intermittent therapeutic follow-up if petitioner is reinstated as an attorney.

### 4. *Rule 955*

On February 23, 1977, we filed an order accepting petitioner's resignation and directing him to comply with rule 955(a) and (c), within 60 and 70 days, respectively. On October 21, 1977, the State Bar filed a letter regarding petitioner's failure to comply with our rule 955 order. On November 19, 1987, 11 months after petitioning for reinstatement, petitioner filed an affidavit of compliance. Petitioner testified at the evidentiary hearing that, while he was not entirely sure, he did not believe he had "any binding matters" involving clients when he resigned from the State Bar.

■ Petitioner asserts the State Bar improperly considered his "technical" noncompliance with rule 955 as a factor in denying reinstatement after 10 years.

We have refused to distinguish between "substantial" and "insubstantial," that is, "technical," violations of rule 955. (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217].) Compliance with rule 955 is an important consideration in every case. The rule "performs the critical prophylactic function of ensuring that all concerned parties—including clients, cocounsel, opposing counsel or adverse parties, and any tribunal in which litigation is pending—learn about an attorney's discipline. [Citations.] It also keeps this court apprised of the location of attorneys who are subject to our disciplinary authority. Thus, a wilful violation of this rule is, by definition, deserving of strong disciplinary measures." (*Ibid.*) Violation of the rule may, among other things, warrant denial of reinstatement or readmission. (rule 955(e).) Compliance with the rule as ordered by this court is required "even though there were no clients or counsel to notify pursuant to subdivision (a). . . ." (*Powers* v. *State Bar* (1988) 44 Cal.3d 337, 341 [243 Cal.Rptr. 386, 748 P.2d 324].) Recently, the Legislature made a violation of rule 955 a criminal offense. (Bus. & Prof. Code, § 6126, subd. (c).) Accordingly, a wilful violation of the rule is always an appropriate and significant consideration in bar disciplinary cases and related matters.

Although we cannot condone petitioner's failure to comply with rule 955, as ordered by this court, we do agree that his noncompliance in and of itself would not, on the facts presented, support a denial of reinstatement. A contrary conclusion would effectively foreclose petitioner from ever being

readmitted regardless of the showing of rehabilitation otherwise made. The violation occurred more than 10 years ago, and does not appear to have caused any injury to clients or to have significantly impaired the State Bar's disciplinary proceedings against petitioner. If noncompliance with the rule, as ordered, were all that was presented, then this would be an appropriate case for us to elect not to exercise our disciplinary authority. (*Durbin* v. *State Bar* (1979) 23 Cal.3d 461, 469 [152 Cal.Rptr. 749, 590 P.2d 876].)

However, petitioner's failure to comply with this court's order is not all that is presented by this case. As noted earlier, petitioner has not met his heavy burden of showing rehabilitation. Both his decision to voluntarily undertake a "program" of repayment in monthly installments of $100 and his decision to comply with rule 955 occurred after he had filed his petition for reinstatement. Where, as here, there is a significant infirmity in the showing of rehabilitation, the failure to comply with rule 955 is a proper consideration.

## 5. *Conditional Reinstatement*

■ Petitioner contends the State Bar erred in concluding as a matter of law that he could not be conditionally reinstated. He suggests it would be appropriate to reinstate him on the condition that he repay the Client Security Fund within a two-year period.

We note that the State Bar did not as a matter of law conclude conditional reinstatement was legally impermissible. Only four of the eleven review department referees referred to conditional reinstatement. Two of the nine review department referees voting in favor of denying the petition for reinstatement expressed regret that applications for reinstatement could not be accepted subject to conditions. The two dissenting members recommended reinstatement with conditions.

The two members who indicated they believed conditional reinstatement was legally impermissible cited our decision in *Tardiff, supra,* 27 Cal.3d 395 as authority for their position. As petitioner argues, the two referees improperly relied on *Tardiff.* Although the hearing panel in *Tardiff* recommended readmission with conditions, our decision denying the petition was based on the failure of the petitioner in that case to meet his burden of establishing rehabilitation. (*Id.* at pp. 404-405.) We neither accepted nor rejected the concept of conditional readmission in *Tardiff.*

We have not previously determined the propriety of conditional readmission following disbarment or resignation with charges pending. There appears to be no legal barrier to our imposing conditions in connection with

the granting of a petition for readmission if we determine it appropriate to do so. The State Bar, however, argues that conditional reinstatement implicitly assumes that the applicant has not been completely rehabilitated, and thus would be inconsistent with the requirement of California Rules of Court, rule 952(d) that an applicant seeking reinstatement establish rehabilitation and present moral qualifications.

While we need not and do not decide in this case that reinstatement may never be granted subject to appropriate conditions (see *Tardiff, supra,* 27 Cal.3d 395), we do conclude that the condition suggested by petitioner is inconsistent with the basic purpose underlying reinstatement. An applicant seeking reinstatement must show rehabilitation. (Cal. Rules of Court, rule 952(d).) As noted earlier, the burden on the applicant is heavy. Where, as here, evidence of the efforts, if any, to make restitution to those seriously harmed by the applicant's previous misconduct is a central consideration, allowing restitution as a subsequent condition would negate the requisite showing and effectively undermine the well-established burden of proof. The applicant must establish his or her case before, not after, reinstatement. To hold otherwise would in fact significantly modify the rules governing reinstatement and appreciably compromise the salutory principles towards which they are directed. Accordingly, we conclude that in this case it would be improper to grant reinstatement subject to petitioner thereafter making the requisite showing of restitution.

## CONCLUSION

Petitioner has established his present learning and ability in the general law. However, he has not met his burden of demonstrating rehabilitation. Specifically, he has neither shown a meaningful attempt to make restitution in whole or in part nor an inability to do so. He may reapply for reinstatement after the formulation of a plan of restitution and adherence to the plan for a meaningful period of time, or upon a specific showing of inability to make restitution in whole or in part. (Rules Proc. of State Bar, rule 662.)

The petition for reinstatement is denied. This is effective upon finality of this decision in this court. (See Cal. Rules of Court, rule 24(a).)

PANELLI, J.—I respectfully dissent. The majority relies upon petitioner's failure to have made restitution for debts discharged in bankruptcy in finding him insufficiently rehabilitated to warrant reinstatement. I believe that our refusal to reinstate petitioner because he has not made restitution of those debts unconstitutionally contravenes federal bankruptcy law.

While giving weight both to disciplinary recommendations of the Review Department of the State Bar (review department) and factual findings of the

hearing panel in this case, when reviewing a petition for reinstatement, as in all State Bar proceedings, we undertake an independent examination of the record. (*Tardiff* v. *State Bar* (1980) 27 Cal.3d 395, 404 [165 Cal.Rptr. 829, 612 P.2d 919].) Final determination of petitioner's request rests with this court, and we are free to disregard an unfavorable recommendation of the State Bar. (*Resner* v. *State Bar* (1967) 67 Cal.2d 799, 805 [63 Cal.Rptr. 740, 433 P.2d 748].)

The review department found that petitioner had the requisite learning in general law to be reinstated, but denied his petition, focusing, as does the majority, on the facts that petitioner (1) failed to fully repay his clients or the State Bar Client Security Fund (Client Security Fund) for moneys he earlier obtained from his clients, and (2) failed to comply as ordered with California Rules of Court, rule 955 (hereafter rule 955) until after he had applied for reinstatement in 1987.

### 1. *Petitioner's Rehabilitation.*

Rule 952(d) of the California Rules of Court requires applicants for readmission to "establish their rehabilitation and present moral qualifications . . . ." (See also rule X, § 101(a), Rules Regulating Admission to Practice Law ["Every applicant shall be of good moral character."].)

In my view, the evidence amply demonstrates that petitioner is now morally rehabilitated though still financially incapable of making full restitution to his former clients. He presented 27 letters in support of his petition for reinstatement, 15 of which were written by members of the bar and 1 by a superior court judge. Attorney John Trump, petitioner's current employer, indicated that he would associate petitioner with his law firm if petitioner is reinstated. We have traditionally accorded great weight to attorneys' and judges' assessment of an applicant's moral fitness because current members of the bar are likely to appreciate the stringent moral standards of the legal profession. (*Pacheco* v. *State Bar* (1987) 43 Cal.3d 1041, 1053 [239 Cal.Rptr. 897, 741 P.2d 1138]; *Tardiff, supra,* 27 Cal.3d at p. 403; see also Rules Proc. of State Bar, div. V, Stds. for Atty. Sanctions for Prof. Misconduct, std. 1.2(e)(vi).) In addition, seven witnesses, including his ex-wife, appeared on petitioner's behalf at the State Bar hearing and testified to his remorse for his past mistakes and success in overcoming his personal and professional problems. His supporters all testified to his intelligence, honesty and trustworthiness and recommended his reinstatement; those who have known petitioner since the early 1970's stated that they have witnessed a marked improvement in his personality since that time.

The State Bar challenged several of these testimonials on the ground that the authors did not have personal knowledge of petitioner's prior

misconduct. Several of petitioner's supporters, however, were in fact his colleagues or friends in the early 1970's. Most of those who did not meet petitioner until after he resigned from the bar indicated that petitioner had informed them of his prior wrongdoings. In short, the majority of petitioner's supporters, especially those who are members of the bar, based their assessment of his moral fitness on an awareness that he had previously violated standards of attorney conduct. These testimonials to petitioner's rehabilitation provide a clearer picture of his present moral character than do offenses from a period in his distant past and adequately demonstrate his rehabilitation. (*Pacheco, supra,* 43 Cal.3d at p. 1054; *Resner, supra,* 67 Cal.2d at p. 805.)

In rejecting petitioner's request for reinstatement, the majority relies almost exclusively on his failure to make restitution to his former clients and the Client Security Fund.[1] But restitution is simply one factor of moral fitness and is not the litmus test for rehabilitation. (*Resner, supra,* 67 Cal.2d at p. 810.) "The importance of making restitution, and a conclusion respecting the weight which should be attached thereto, should be determined largely by the financial or other ability of the attorney to restore that which he has misappropriated, as well as by his attitude of mind regarding the matter." (*In re Gaffney* (1946) 28 Cal.2d 761, 764 [171 P.2d 873].)

Petitioner has stated that he has always felt morally obligated to repay his former clients, even though he is not legally required to pay any debts discharged in bankruptcy. Over the past 12 years, he has attempted at different times to partially repay some of his former clients, has completely paid off Mr. Christian, Ms. Schilder and the Allen Corporation, as well as several other court judgments entered against him, and has kept current on payments for child support and back taxes.[2] Pending his readmission, petitioner voluntarily began placing money in an account toward repayment of his former clients and the Client Security Fund, and has indicated an intent to begin a comprehensive payment schedule as soon as his earnings permit.

Record evidence establishes that petitioner's income and circumstances have not provided him with the ability to make restitution. From 1984

---

[1] The majority acknowledges that petitioner has made "substantial progress towards rehabilitation." (*Ante,* maj. opn. at p. 1095.) Furthermore, the majority concedes that petitioner's noncompliance with rule 955 would not support a refusal to reinstate him in the absence of concerns about his rehabilitation. (*Ante,* maj. opn. at p. 1096.) When reviewing "other evidence" which it finds to indicate a lack of rehabilitation (*ante,* maj. opn. at p. 1095), however, the majority points only to witness testimony and testimonial letters which assertedly support the view that petitioner should have made restitution.

[2] The record does not reveal the exact amount of personal debt outstanding or the exact number of remaining creditors.

through 1987, he grossed approximately $3,000 per month;[3] he now earns approximately $3,500 per month. As an independent contractor, however, he must both withhold taxes and pay office expenses out of his salary. In addition, he pays $225 in monthly child support, $200 per month towards back taxes, and almost $600 monthly to various personal creditors. His take-home pay usually ranges between $1,000 and $1,200; in any event it has never exceeded $1,500. It is not difficult to understand that petitioner has found that providing for his own material support depletes these remaining funds.

In sum, I believe that petitioner has established his burden of proving rehabilitation. (*Calaway* v. *State Bar* (1986) 41 Cal.3d 743 [225 Cal.Rptr. 267, 716 P.2d 371] [petitioner reinstated nine years after disbarment for involvement in illegal gambling]; *Resner, supra,* 67 Cal.2d 799 [petitioner reinstated seven years after disbarment for misappropriation]; *In re Gaffney, supra,* 28 Cal.2d 761 [petitioner reinstated four years after disbarment for misappropriation].) In the early 1970's, petitioner's attempt to support a lifestyle beyond his means, coupled with the pressure from the breakup of his marriage, caused him to violate his professional duties by borrowing from clients and dipping into client trust funds. Without excusing his past misconduct, we should find that petitioner has adequately demonstrated he will not repeat his transgressions. His wrongdoings occurred more than 15 years ago.[4] Since then, he has stabilized his life and controlled his finances. He has held a steady job in a law firm for more than five years, earning the respect of his colleagues and supervisors. He has paid off several old debts and has made a good faith effort at beginning a comprehensive repayment schedule. In addition, he has not practiced law for more than 12 years. Dr. Fraser, petitioner's psychotherapist, feels that petitioner has overcome his selfish tendencies and is now able to maturely handle his personal and professional finances. Dr. Fraser stated that he believes petitioner "would now responsibly handle the finances in a law practice without overextending himself, because of the progress he made in his therapy."

I believe petitioner has provided clear and convincing evidence of his moral and professional reform, satisfying the requirements for reinstatement.

Moreover, the majority's action today, refusing to reinstate petitioner because he has not made restitution for debts discharged in bankruptcy,

---

[3] For three consecutive months in 1986 and 1987, the Internal Revenue Service withheld $2,000 from petitioner's salary to satisfy a lien for back taxes.

[4] The majority's suggestion (*ante,* maj. opn. at p. 1096) that they are "denying reinstatement after 10 years" is misleading so far as it leaves its reference point unstated. Petitioner's misconduct occurred between 1971 and 1975. (*Ante,* maj. opn. at p. 1088.)

contravenes federal bankruptcy law and thus the supremacy clause of the federal Constitution.

The United States Bankruptcy Code provides in relevant part that a "governmental unit may not deny, revoke, suspend or refuse to renew a license . . . of . . . a bankrupt or debtor under the Bankruptcy Act . . . solely because such debtor is or has been a debtor under the Bankruptcy Act . . . or has not paid a debt that was discharged under the Bankruptcy Act." (11 U.S.C. § 525(a).)

By refusing to reinstate petitioner almost exclusively because of his failure to make restitution, the majority seeks, in essence, to penalize him for availing himself of the bankruptcy laws.

In *Perez* v. *Campbell* (1971) 402 U.S. 637, 648 [29 L.Ed.2d 233, 241, 91 S.Ct. 1704], the Supreme Court stated that the federal bankruptcy laws are designed to give debtors a new opportunity in life, unhampered by the pressure of existing debt. A state statute that coerces a debtor to reaffirm a discharged debt contravenes the purpose of the federal bankruptcy laws, thus violating the supremacy clause of the United States Constitution. (*Id.* at p. 656 [29 L.Ed.2d at p. 246] [state may not deny driving privileges to applicant who discharged in bankruptcy a judgment arising out of an earlier automobile accident].) Other states, relying on *Perez*, have declined to refuse reinstatement of an attorney for a failure to to make restitution. (*Application of Gahan* (Minn. 1979) 279 N.W.2d 826, 829 [4 A.L.R.4th 426] [state bar may not consider applicant's willingness or ability to repay debts discharged in bankruptcy when judging moral character; it *may* inquire into conduct leading up to a bankruptcy]; *Florida Bd. of Bar Examiners* (Fla. 1978) 364 So.2d 454, 460 [state bar may not deny admission based on applicant's filing for bankruptcy].) The majority thus improperly relies on petitioner's failure to make restitution either to his former clients or to the Client Security Fund for debts he discharged in bankruptcy as a basis for rejecting his petition for reinstatement.[5]

---

[5] The majority refuses petitioner's request that he be reinstated with the condition he make restitution of his debts. Neither the Business and Professions Code, Rules of Court nor the Rules of Procedure of the State Bar expressly provide for conditional reinstatement. On the other hand, none of these statutes enjoins the practice. In addition, rule 667 of the State Bar Rules of Procedure *does* authorize this court to readmit an applicant subject to other conditions, such as passage of the Professional Responsibility Examination or other tests related to learning in the general law. At least nine other states have employed some form of conditional reinstatement. (*Disciplinary Proceedings Against Wright* (Wis. 1988) 145 Wis.2d 644 [428 N.W.2d 549] [court had earlier conditioned reinstatement on continuing education, one year of professional supervision, medical treatment and restitution to former clients; court suspended attorney for not complying with these conditions]; *Louisiana State Bar Ass'n.* v. *Ranel* (La. 1988) 534 So.2d 951 [court suspended attorney and conditioned reinstatement on restitution to former clients]; *Gohner* v. *Zundel* (N.D. 1987) 411 N.W.2d 71, 75 [court condi-

In refusing to reinstate petitioner, the majority relies upon our recent pronouncement in *Brookman* v. *State Bar, supra,* 46 Cal.3d 1004, that the Bankruptcy Act permits imposition of restitution to the Client Security Fund as a condition of probation in attorney discipline cases.

Two important considerations distinguish *Brookman* from this case.

First, as discussed below, *Brookman*'s holding applies only to restitution of government funds, not moneys owed private creditors, and only when the restitution of those funds is not meant as compensation for actual pecuniary loss. *Brookman* relied on *Kelly* v. *Robinson* (1986) 479 U.S. 36 [93 L.Ed.2d 216, 228, 107 S.Ct. 353], which held that restitution of wrongfully received welfare benefits could be made a condition of probation following a subsequent larceny conviction, because such restitution came within a class of payments described in section 523(a)(7) of the Bankruptcy Act. Section 523(a)(7) lists certain "nondischargeable debts," among them a "fine, penalty, or forfeiture . . . payable to and for the benefit of a governmental unit, and . . . not compensation for actual pecuniary loss." Following *Kelly,* we found the restitution ordered in *Brookman* constitutionally permissible expressly because it would involve no payments to the petitioner's underlying creditors, but only to the Client Security Fund. (*Brookman, supra,* 46 Cal.3d at p. 1009.) The majority here refuses petitioner his license to practice because he failed to make restitution to certain of his former clients, as well as to the Client Security Fund. (Maj. opn., *ante,* at pp. 1091, 1092,

---

tioned reinstatement on proof of competency to practice]; *Atty. Grievance Comm'n.* v. *Willemain* (1986) 305 Md. 665 [506 A.2d 245, 253] [court suspended attorney and conditioned reinstatement on participation in Alcoholics Anonymous program]; *Matter of Ortega* (1984) 101 N.M. 719 [688 P.2d 329, 333] (court conditioned reinstatement on restitution to former clients]; *Matter of Batali* (1983) 98 Wn.2d 610 [657 P.2d 775, 39 A.L.R.4th 577] [court conditioned reinstatement on payment of debts previously discharged in bankruptcy but voluntarily reaffirmed; court refused to compel attorney to reaffirm other debts]; *In re Neff* (Ill. 1980) 413 N.E.2d 1282, 1284 [court suspended attorney after she failed to pay costs of disciplinary proceedings in another state and conditioned reinstatement on repayment of those costs]; *Matter of Hickey* (N.J. 1976) 350 A.2d 483 [court conditioned reinstatement on complete restitution]; *Comm. on Professional Ethics* v. *Wright* (Iowa 1970) 178 N.W.2d 749, 752 [court conditioned reinstatement on "good faith effort" at restitution to former clients].)

Contrary to the majority's assertion, a condition of rehabilitation would not be logically inconsistent with a determination that petitioner is rehabilitated. Petitioner's reinstatement on the condition that he make restitution would not imply any negative judgment about his present moral fitness, but might be adopted for any number of legitimate state purposes, for example, as a means of enhancing public confidence in the legal profession, or simply as an accommodation of petitioner's request that we provide him with an additional incentive to meet what he has said he regards as his moral obligation to make repayment. Compliance could be monitored by the State Bar using mechanisms already in place for use when such a condition accompanies disciplinary probation. Of course, this would be an appropriate case for conditional reinstatement only if, as the majority contends, the federal bankruptcy laws are no bar to the particular conditions imposed. (See *Brookman* v. *State Bar* (1988) 46 Cal.3d 1004 [251 Cal.Rptr. 495, 760 P.2d 1023].)

1094.) This refusal is not supported by *Kelly* or *Brookman.* On the contrary, it impermissibly frustrates the full effectiveness of federal bankruptcy laws as applied to petitioner, by diminishing the effect of the "clean slate" or "fresh start" that the discharge of his debts was designed to afford him. Though the majority holding assertedly serves a purpose (viz, rehabilitation) other than frustration of the bankruptcy laws, it nevertheless impermissibly tends to nullify or thwart the objectives of federal law. (*Perez* v. *Campbell, supra,* 402 U.S. at pp. 651-654 [29 L.Ed.2d at pp. 243-245] ["We can no longer adhere to the aberrational doctrine . . . that state law may frustrate the operation of federal law as long as the state legislature in passing the law had some purpose in mind other than one of frustration."].)

Second, the petitioner in *Brookman* did not dispute the need for rehabilitation in his case. (*Brookman, supra,* 46 Cal.3d at p. 1007.) The *Brookman* court, consequently, did not need to consider whether the order in that case amounted to reliance upon what is at most a tangential objective (rehabilitation) as a pretextual means of compelling the petitioner to reaffirm a debt discharged in bankruptcy. Such a reliance has been declared to be an impermissible derogation of federal bankruptcy law. (*Perez, supra,* 402 U.S. at p. 652 [29 L.Ed.2d at p. 244].) The majority's action in this case invites such characterization in citing no significant evidence of petitioner's lack of rehabilitation apart from evidence relating to his failure to make restitution. (See fn. 1, *ante,* at p. 1100.)

### 2. *Compliance with Rule 955.*

While acknowledging it would not alone support denial of his reinstatement, the majority contends that petitioner's failure to comply with rule 955 at the time of his resignation is a proper factor to consider in light of petitioner's asserted lack of rehabilitation. I disagree. The primary purpose of rule 955 is to ensure that all concerned parties, including clients, cocounsel, opposing counsel and any tribunals in which litigation is pending, learn about the State Bar's discipline of an attorney.[6] (*Lydon* v. *State Bar* (1988) 45 Cal.3d 1181, 1187 [248 Cal.Rptr. 830, 756 P.2d 217].)

At the time of petitioner's resignation, he had no clients and no pending matters. In fact, he had effectively closed down his law practice a year

---

[6] Rule 955(a) reads in pertinent part: "The Supreme Court may include in an order disbarring or suspending an attorney or accepting his resignation a direction that the attorney shall, within such time limit as the Court may prescribe, (1) notify all clients being represented in pending matters and any co-counsel of his disbarment, suspension or resignation and his consequent disqualification to act as an attorney after the effective date of his disbarment, suspension or resignation, and, in the absence of co-counsel, also notify the clients to seek legal advice elsewhere, calling attention to any urgency in seeking the substitution of another attorney or attorneys in his place . . . ."

earlier and at the time of his resignation was already working in the real estate business. Whether he did in fact violate rule 955(a) by failing to mail out notices of his resignation, where required recipients of such notices did not exist, is at best problematic. Petitioner's alleged violation of the rule therefore stems solely from his failure to file an address with the State Bar.[7]

However, rule 955 also has a secondary purpose: to keep the State Bar and the court apprised of the location of attorneys who are subject to their disciplinary authority.[8] (*Lydon, supra,* 45 Cal.3d at p. 1187.) In the past, we have held that failure to file an address may be grounds for disbarment. (*Lydon, supra,* 45 Cal.3d 1181; *Powers* v. *State Bar* (1988) 44 Cal.3d 337 [243 Cal.Rptr. 386, 748 P.2d 324].) Both *Lydon* and *Powers* are distinguishable from the present case, however. In those cases, the State Bar had attempted on several occasions to communicate with the attorneys involved only to have their letters returned by the postal service. In addition, both Lydon and Powers had failed to appear at several State Bar hearings, including the hearings regarding their alleged violation of rule 955. (*Lydon, supra,* 45 Cal.3d at pp. 1184-1185; *Powers, supra,* 44 Cal.3d at pp. 340-341; see also *Hamilton* v. *State Bar* (1979) 23 Cal.3d 868, 873-874 [153 Cal.Rptr. 602, 591 P.2d 1254].) Thus, their failure to give the State Bar their addresses seriously hampered the disciplinary process in their cases. In contrast, petitioner has diligently followed all of the State Bar's procedures. The majority concedes that petitioner's failure to file an address at the time of his resignation caused no injury to petitioner's clients and in no way affected its past or present disciplinary proceedings against him, or otherwise inconvenienced the State Bar.[9] While not condoning petitioner's noncompliance with rule 955, we should, under the circumstances, forego exercising our disciplinary power under rule 955(e). (Cf. *Durbin* v. *State Bar* (1979) 23 Cal.3d 461, 469 [152 Cal.Rptr. 749, 590 P.2d 876] [failure to file affidavit of compliance with State Bar does not warrant one-year suspension

---

[7] In November 1987, while his petition for reinstatement was pending, petitioner mailed notices of his prior resignation to all of his former clients and a supporting affidavit along with a current address to the State Bar. As mentioned above, petitioner did not represent these clients at the time of his resignation, since he had closed down his practice a year earlier.

[8] Rule 955(c) reads in pertinent part: "[The] affidavit showing that he has fully complied with those provisions of the order entered pursuant to this rule . . . shall also set forth an address where communications may thereafter be directed to the disbarred, suspended, or resigned attorney."

[9] It should be noted that the hearing panel did not mention petitioner's noncompliance with rule 955 in their findings and conclusions and did not consider it a basis for denial of his reinstatement. The review department, however, considered it evidence that petitioner had not demonstrated the adequate level of "exemplary conduct" for reinstatement.

even though noncompliance willful; court ordered six months' suspension or actual compliance].)

Mosk, J., and Broussard, J., concurred.

Petitioner's application for a rehearing was denied March 1, 1990. Broussard, J., and Panelli, J., were of the opinion that the petition should be granted.